# United States Court of Appeals

### For the Eighth Circuit

_____

No. 17-3346

_____

United States of America

*Plaintiff - Appellee*

v.

Colin J. Michael

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 25, 2018
Filed: November 30, 2018
[Published]

_____

Before WOLLMAN, KELLY, and ERICKSON, Circuit Judges.

_____

PER CURIAM.

Colin Michael appeals the 96-month term of imprisonment imposed upon him after revocation of his five-year term of probation. Because we conclude that the district court committed procedural error in failing to consider the Sentencing Commission's policy statements regarding probation revocations and, on this record, the error is not harmless, we remand for resentencing.

## I.    Background

On May 12, 2016, pursuant to a plea agreement, Colin Michael pled guilty to possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4).  The offense has a statutory maximum term of imprisonment of 120 months.  At sentencing, the district court found pursuant to the United States Sentencing Guidelines ("Sentencing Guidelines" or "U.S.S.G.") that Michael's offense level was 30 and that he was in criminal history category I.  The court determined that the applicable advisory sentencing guideline range was 97 to 120 months' imprisonment.

The prosecutor recommended a term of imprisonment of 40 months.  Michael requested a sentence of probation.  Two people, who had professional relationships with Michael, testified at the sentencing hearing.  The first witness was Dr. Steven Peterson, a general and forensic psychiatrist, who forensically evaluated Michael at the request of defense counsel.  Dr. Peterson interviewed Michael, who was 35 years old, for four and a half hours in October 2014.  He also interviewed Michael's parents.  In conducting his evaluation, Dr. Peterson administered psychological tests "to address [Michael's] functioning from an alternative perspective and just face-to-face presentation."

Based on his interviews and tests, Dr. Peterson opined that:

Colin has significant developmental difficulty called Asperger's Syndrome, which has now been reclassified as one of the autism spectrum disorders. And while he has the ability to discern right from wrong, he also has significant difficulties with social reciprocity, and basically his psychosexual and psychological development plateaued around early teens, and so that affects his judgment.[1]

---

[1]Sent. Tr. p. 18 (Nov. 17, 2016).

-2-

Dr. Peterson testified that his reference to early teens meant 12–or 13–years old and added that Michael behaved in some ways like a child that was 9–or 10–years old. Examples of the more immature behavior noted by Dr. Peterson included collecting die cast cars, collecting shot glasses, and rearranging VHS tapes and DVDs compulsively up to 20 times a month. Dr. Peterson described Michael's social development as consistent with a person of late pre-adolescent or adolescent age. He also noted Michael's susceptibility to manipulation and high level of dependence on structure from his family.

Prior to sentencing, Michael had been actively involved in a treatment program at Hope Harbor for close to one year. Hope Harbor, which had been in existence for 23 years, was described at sentencing as one of the largest sex offender treatment programs in eastern Kansas. The treatment program Michael participated in had two components: individual psychotherapy sessions and group psychotherapy. Dr. Bascom W. Ratliff, who holds a Ph.D. in clinical social work, was the director of associates at Hope Harbor, and facilitated the sex offender treatment program at Hope Harbor, testified that Michael started treatment at the clinic in December 2015. Dr. Ratliff saw Michael weekly. He had anticipated that Michael would continue the treatment program for a minimum of twelve additional months. Dr. Ratliff explained that during treatment a participant can have a lapse in judgment. Part of the reason given by Dr. Ratliff for the extended program was because he expected lapses to happen, especially with people involved in pornography. When a lapse in judgment happens, the issue is addressed with the offender and it becomes part of prevention planning. According to Dr. Ratliff, when the active care portion of the treatment is completed, participants in the program who have been convicted of a crime continue on in the after care program until their period of probation or parole expires.

Dr. Peterson explained at sentencing that a young person with the social delays typically associated with Asperger syndrome is at increased risk for obsessive preoccupation with things on the Internet. This obsession can lead a person to

pornography and child pornography. Dr. Ratliff described Michael's participation at Hope Harbor as "active," meaning he completed all assigned activities and exercises and kept a journal that he shared with the group. Continued participation in the treatment program at Hope Harbor caused Dr. Peterson to believe that Michael was at a lower risk of recidivism.

Upon consideration of the parties' recommendations and "considerable consideration to the testimony of the[] two witnesses," the district court imposed a five-year term of probation with detailed conditions and $2,500.00 in restitution to be paid during the probationary term. The court varied from the advisory sentencing guidelines range on the grounds that it was "the best solution for [Michael's] Asperger's problem and mental status." The court explained: (1) the guidelines inadequately addressed Michael's conduct relating to the charge and "inadequately differentiates between gradients of Section 2252-8," and (2) the federal penal system is not in a position at this time to house inmates, like Michael, with Asperger syndrome and a limited mental capacity. In conclusion, the court found that the probationary sentence was "a reasonable sentence for punishment, deterrence and to serve the ends of justice."

On September 11, 2017, Michael was arrested on a warrant issued at the request of Michael's supervising probation officer based on alleged violations of conditions of probation. The petition alleged that Michael violated conditions related to: (a) possession of materials involving pornographic/erotic or sexually explicit conduct; (b) participation in sex offender counseling; (c) use of a computer or electronic device with online access without the prior approval of the probation officer; and (d) untruthful responses to questions asked by the probation officer. The probation officer's investigation appears to stem from answers given by Michael during a polygraph test that was part of Michael's sex offender therapy.

Michael's case was randomly assigned to a different judge for proceedings relating to the probation violations. Michael admitted to each of the violations contained in the petition. The prosecutor argued at the revocation hearing that the court should revoke Michael's probation and impose the 40-month term of imprisonment that he originally requested because Michael was not amendable to treatment and he posed a risk to the public. Defense counsel pleaded with the judge not to ignore the evidence presented at the initial sentencing hearing regarding Michael's mental illness, noted that the guideline range in the revocation table was three to nine months, and requested that Michael be given a sentence of nine months' imprisonment with the reinstatement of supervision to allow Michael to participate in additional treatment programs that were available.

The judge expressed some uncertainty about the specific "mental illness" being raised by defense counsel. After Michael informed her of his Asperger syndrome diagnosis in 2014 and his long-term counseling with a psychologist who has acted as his "life coach" since seventh grade, the court responded.

> In looking at the presentence investigation report, it does set forth that Mr. Michael has been seeing Judy Moore since approximately age 12, and I don't see the difference it's made in his ability to refrain from being attracted or to stop from acting out on his impulses to view pornography and child pornography.

The court then recited evidence that supported the sentencing judge's decision to place Michael on probation and concluded "with 20/20 hindsight that was the wrong assessment." The court interpreted the violation in the case as attempted possession of child pornography. The judge believed that Michael "knows in his heart he was viewing child pornography, just wasn't caught." After articulating these reasons, the judge imposed a sentence of 96 months, which was more than twice what the prosecutor recommended. While the sentence imposed constituted an 87-month upward variance from the guideline range, it was a one-month variance from

-5-

the low end of the applicable guideline range as calculated at the time of Michael's original sentencing. The court attributed the one-month variance to Michael's "characteristics" and lack of criminal history.

## II. Discussion

Michael advances two arguments on appeal: (1) the court procedurally erred by failing to adequately explain the basis for the sentence, and (2) the sentence imposed is substantively unreasonable. We consider each in turn.

At the revocation hearing, in determining the appropriate sentence, the court relied on the applicable guideline sentencing range that was calculated at Michael's initial sentencing hearing. The prosecutor requested the same sentence, and noted he would not object if the court imposed a higher sentence on revocation. Michael asked the court to consider the revocation table set forth in Chapter 7 of the Sentencing Guidelines. In Michael's case, the advisory revocation sentencing guideline range was a term of imprisonment of three to nine months. Michael recommended the imposition of a sentence of nine months in custody.

In order to analyze Michael's first argument, we begin with the sentencing options available to the district court. If a defendant violates a condition of probation, 18 U.S.C. § 3565(a)[2] sets forth the available options:

> (1) continue [the defendant] on probation, with or without extending the term or modifying or enlarging the conditions; or
>
> (2) revoke the sentence of probation and resentence the defendant under subchapter A.

---

[2] 18 U.S.C. § 3565(b) provides for mandatory revocation in circumstances not applicable in this case.

Subchapter A, among other things, sets forth the factors a court is to consider in imposing a sentence. In the case of a probation violation, the court is specifically directed to consider "the applicable guidelines or policy statements issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(4)(B).

Under 28 U.S.C. § 994(a)(3), the Sentencing Commission has issued policy statements applicable to probation and supervised release revocations. The Sentencing Commission elected to develop a single set of policy statements for probation and supervised release revocations based on the determination that the purpose of supervision for both probation and supervised release "should focus on the integration of the violator into the community, while providing the supervision designed to limit further criminal conduct." U.S.S.G. Ch. 7, pt. A(4). The pertinent policy statements, as contained in Chapter 7 of the Sentencing Guidelines, classifies violations of probation or supervised release conditions into one of three grades and then sets forth an advisory sentencing range based on the grade of the violation and the defendant's original criminal history category. U.S.S.G. §§ 7B1.1 and 7B1.4.

After Michael admitted to violating his conditions of probation, the district court had the options of continuing him on probation, or revoking probation and imposing any sentence that initially could have been imposed. Under either option, the statute requires the court to consider "the policy statements issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(4)(B). Here, there is no indication the court considered or weighed the applicable policy statements before imposing the sentence. The court performed none of the mechanical functions associated with the sentencing guidelines or the sentencing statute. The court did not find the grade of the violation, as required by U.S.S.G. § 7B1.1.

The court's procedural error when imposing Michael's sentence requires remand. See United States v. Sullivan, 853 F.3d 475, 480 (8th Cir. 2017) (concluding

that a court's failure to sufficiently explain its upward departure is a significant procedural error requiring remand).

Michael also argues that the sentence imposed was substantively unreasonable. "We review a revocation sentence under the same 'reasonableness' standard that applies to initial sentencing proceedings." United States v. Merrival, 521 F.3d 889, 890 (8th Cir. 2008). "We do not require a district court to mechanically list every § 3553(a) consideration when sentencing a defendant upon revocation of supervised release." United States v. Petreikis, 551 F.3d 822, 824–25 (8th Cir. 2009) (quotation omitted). However, "[t]he sentencing judge should set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." Rita v. United States, 551 U.S. 338, 356 (2007); see Gall v. United States, 552 U.S. 38, 50 (2007) ("After settling on the appropriate sentence, [the district court] must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing."). "If the court of appeals considers an explanation inadequate in a particular case, it can send the case back to the district court for a more complete explanation." Chavez-Meza v. United States, — U.S. —, 138 S.Ct. 1959, 1965 (2018) (citing Molina-Martinez v. United States, — U.S. —, 136 S.Ct. 1338, 1348 (2016) ("[A]ppellate courts retain broad discretion in determining whether a remand for resentencing is necessary.")).

In Michael's case, the judge presiding over the revocation sentencing was not the same judge who imposed the initial sentence. The court is mindful of the difficulties that can occur when a case is reassigned. Sentencing judges in this predicament are to familiarize themselves with the record in order to ensure that a sentence modification or revocation is consistent with the entire history of the case. We are concerned that the record does not demonstrate familiarity with Michael's unique circumstances and characteristics. For example, there was extensive testimony at Michael's initial sentencing hearing about Asperger syndrome and how

the illness affected Michael's intellectual and social development, as well as the offense at issue in this case and the likelihood of there being lapses in judgment. When defense counsel referred to Michael's mental illness as part of her sentencing recommendation during the probation revocation proceeding, the judge expressed uncertainty as to which mental illnesses were present in Michael's case. It also appears that the sentence may have been based on facts not contained within the record. We are unable to find evidence to support the sentencing judge's comment that Michael "knows in his heart he was viewing child pornography, just wasn't caught."

Our concerns about whether the court was sufficiently informed about Michael's case combined with the failure to explain its decision to impose a sentence seven years above the guideline range leaves us with an evidentiary record that does not support the sentence that was imposed. Under these circumstances, we find the sentence imposed is substantively unreasonable.

## III.    Conclusion

The procedural error of ignoring entirely Chapter 7 of the Sentencing Guidelines is not harmless. The record does not demonstrate that the district court considered evidence regarding Michael's mental illness, which was a fundamental consideration at the time the initial sentence was imposed and remained an important part of the case when assessing the appropriate sentence for the probation violations. We vacate Michael's sentence and remand to the district court for resentencing.

_____