# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-1885
_____

United States of America

*Plaintiff - Appellee*

v.

Colin J. Michael

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City
_____

Submitted: January 14, 2021
Filed: September 13, 2021
_____

Before SMITH, Chief Judge, KELLY and ERICKSON, Circuit Judges.
_____

ERICKSON, Circuit Judge.

In 2016, Colin Michael pled guilty to possessing child pornography in violation of 18 U.S.C. § 2252(a)(4). The district court, relying heavily on the mitigating fact that Michael suffers from Asperger's syndrome, imposed a 5-year probationary sentence. Months later, Michael was arrested for a probation violation. Michael

appeared before a different judge,[1] who revoked Michael's probation and sentenced him to 96 months' imprisonment. On Michael's first appeal, we concluded that the district court procedurally erred and remanded the case for re-sentencing. United States v. Michael, 909 F.3d 990 (8th Cir. 2018) (per curiam). On remand, the district court again imposed a 96-month sentence. Michael appeals, arguing that his sentence is substantively unreasonable. We affirm.

## I.      BACKGROUND

Michael pled guilty to possessing child pornography. His conviction involved possession of about 1,200 images and 80 videos of child pornography. Some of the material was sadistic or masochistic while other material featured infants and toddlers. The district court sentenced Michael to a probationary term of 5 years. His sentence was a significant downward variance from his applicable Sentencing Guidelines range of 97 to 120 months. The district court based its variance on (1) its policy disagreements with the Sentencing Guidelines for child pornography offenses, and (2) Michael's Asperger's syndrome, which put his mental capacity around that of a 13- or 14-year old.[2]

About four months later, the conditions of Michael's probation were modified after his supervising probation officer alleged that Michael lied during a polygraph examination and had unauthorized contact with children. Six months after that, Michael was arrested for violating the terms of his probation. According to the

---

[1]The Honorable Roseann A. Ketchmark, United States District Judge for the Western District of Missouri.

[2]The district court also subsequently re-opened the record to add that it did not "believe the federal penal system at this time is in a position to properly house . . . defendants like this who have Asperger's syndrome and have a limited mental capacity."

probation officer's report, Michael violated the terms of his probation by possessing (adult) pornography, using a television to try to access child pornography, and lying about his conduct during a polygraph test taken as part of his sex offender therapy.

When Michael was arrested, his case had been reassigned to a different district judge. Following a hearing, the district court revoked Michael's probation and sentenced him to 96 months' imprisonment. Michael appealed, and we concluded that the district court committed procedural errors by not finding the grade of Michael's probation violation and not considering the appropriate Sentencing Guidelines' policy statements. We also concluded the sentence was substantively unreasonable based on the record before us at that time, which did not indicate the district court was aware of Michael's Asperger's syndrome. We remanded the case for re-sentencing.

On remand, the district court reimposed the same sentence. In fashioning its sentence, the court focused on the danger that Michael posed to the community, noting his: (1) possession of a book entitled *Youthful Prey: Child Predators Who Kill*; (2) watching television shows involving sex crimes against children and being aroused by them; (3) lack of honesty about sexual partners; (4) fantasies about young boys and girls; (5) driving to stores that sell pornographic material but not going inside; (6) consuming alcohol to the point of intoxication; (7) accessing adult pornography; and (8) trying to access child pornography.

Given Michael's conduct, the district court found that Note 3 of § 7B1.4 of the Sentencing Guidelines was applicable because it recognized that an upward departure from the revocation table may be warranted in the case of a grade C violation associated with a high risk of new felonious conduct. The court explained Michael's actions were "significant red flags and significant violations, posing "a grave risk to the community." The court further explained that although Michael reported he had not had sexual contact with a child, his conduct was escalating to the point that he

was again seeking out child pornography while participating in sex offender treatment.

Based largely on the danger to the community, the district court imposed a 96-month sentence. Michael appeals the reasonableness of his sentence.

## II. ANALYSIS

We review "the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." Gall v. United States, 552 U.S. 38, 51 (2007); see also United States v. Misquadace, 778 F.3d 717, 718–19 (8th Cir. 2015). A district court abuses its discretion by failing "to consider a relevant factor that should have received significant weight, giv[ing] significant weight to an improper or irrelevant factor, or consider[ing] only the appropriate factors but commit[ting] a clear error of judgment in weighing those factors." United States v. Leonard, 785 F.3d 303, 306–07 (8th Cir. 2015) (per curiam) (citation omitted).

In support of his claim that the sentence is substantively unreasonable, Michael notes that the applicable revocation Guidelines range was 3 to 9 months' imprisonment. However, we have held that, on revocation of probation, a sentence that falls within the original Sentencing Guidelines range for the underlying crime of conviction "is presumptively reasonable." United States v. Holdsworth, 830 F.3d 779, 786 (8th Cir. 2016). Where, like here, the district court imposed a sentence below the original Guidelines range, "it is nearly inconceivable that the court abused its discretion in not varying downward still further." United States v. Lazarski, 560 F.3d 731, 733 (8th Cir. 2009).

When a probationary sentence is revoked, applying the presumption of reasonableness to a term of imprisonment falling within the original Sentencing Guidelines range for the underlying crime of conviction is natural. Probation is

different than supervised release. In the case of a supervised release violation, defendants have already served a term of incarceration on their underlying crime of conviction. In contrast, in the case of a probation violation, defendants have not served a term of incarceration. A defendant ought not be placed in a better position to challenge the reasonableness of a Guidelines sentence for a crime of conviction after violating probation than he is before breaching the court's trust. United States v. Verkhoglyad, 516 F.3d 122, 135 (2d Cir. 2008).

We have recognized that when Congress broadened 18 U.S.C. § 3565 to allow the revoking court to resentence the defendant under Subchapter A, it permitted the district court to begin the sentencing process anew and impose any sentence appropriate under that subchapter. United States v. Tschebaum, 306 F.3d 540, 543–44 (8th Cir. 2002). Section 3565 expressly provides that the revoking court is to consider both the factors found in § 3553(a) and Subchapter A.

Here, the district court, aware of Michael's Asperger's diagnosis and its tendency to impair individuals' insight and cause fixation problems, decided to give greater weight to the risk to the public arising from Michael's fascination with violence against children and his persistent attraction to child pornography. The court was concerned that Michael's conduct was escalating and that he posed a threat to the community. Undoubtedly, a different reasonable jurist sentencing Michael could analyze this case differently.

The dissent isolates various evidence leading to the conclusion that the district court made unsupported findings. We do not believe the district court did so. The television show referenced by the dissent depicted crimes against children and Michael was sexually aroused by it. The book entitled *Youthful Prey: Child Predators Who Kill* contained subject matter that the court found was "the highest level of child abuse." It was permissible for the court to consider this evidence when fashioning its sentence.

It is important to not give too much weight to Michael's lack of success in finding child pornography with searches on YouTube. That Michael, while participating in sex offender treatment, continued to use identical search terms as those that he previously used to obtain child pornography, is something a sentencing judge could permissibly consider when determining the appropriate sentence.

## III. CONCLUSION

Given the evidence before the district court and the explanation for the sentence, Michael's sentence was not substantively unreasonable. We affirm.

KELLY, Circuit Judge, dissenting.

Nearly three years ago, we remanded this case for resentencing based on both procedural error and substantive unreasonableness. We did so because it was unclear from the record whether the district court considered Michael's diagnosis of Asperger's syndrome,[3] and it appeared that the 96-month sentence may have been based on facts not in the record.[4] The case is before us again. Because I believe the

_____

[3]Asperger's syndrome has "been reclassified as one of the autism spectrum disorders." United States v. Michael, 909 F.3d 990, 991 (8th Cir. 2018).

[4]In the first appeal, we were concerned that "the sentence may have been based on facts not contained within the record" because we were "unable to find evidence to support the sentencing judge's comment that Michael 'knows in his heart he was viewing child pornography, just wasn't caught.'" Michael, 909 F.3d at 995. To the extent the district court made this finding again on remand, I continue to have the same concern. At the post-remand sentencing hearing, the district court explained that it had made the aforementioned statement "because when you plug in teen and preteen when you're on pornography, those can . . . and do pop up" and "the filters are not sophisticated enough . . . to sterilize the YouTube videos." I am unable to find evidence in the record to support a finding that child pornography is available on YouTube or that its search filters were not sufficiently sophisticated to prevent Michael from accessing it.

record does not support the rationale given for the reimposed 96-month sentence, I respectfully dissent.

Although Michael's sentence falls one month below the original Guidelines range, the Guidelines are just "the starting point and the initial benchmark" for crafting an appropriate sentence. Gall v. United States, 552 U.S. 38, 49 (2007). The sentencing court must also weigh the § 3553(a) factors and "make an individualized assessment based on the facts presented." Id. at 49–50. Of course, "the fact that [an appellate court] may have weighed some facts differently" is generally "insufficient to justify reversal of the district court." United States v. Garate, 543 F.3d 1026, 1029 (8th Cir. 2008) (cleaned up). We defer to district courts, who are in the best position to weigh the evidence and fashion a reasonable sentence accordingly. But such deference is inappropriate when the district court has placed significant weight on facts unsupported by the record. See, e.g., United States v. Michael, 909 F.3d 990, 995 (8th Cir. 2018); United States v. Kane, 639 F.3d 1121, 1137 (8th Cir. 2011).

In this case, the district court's primary concern on remand was "the need to protect the community," and it characterized this need as "extremely high" in Michael's case. More specifically, the district court explained that its "greatest concern" was "not that [Michael] would reoffend by viewing child pornography," but rather, "the danger to the community" that Michael posed in light of his "escalating" condition as a sex offender attracted to children. But in concluding that Michael posed a physical danger to children, the district court relied on inferences unsupported by the record and facts that bear only on the risk that he might seek out child pornography in the future. Cf. United States v. Jenkins, 854 F.3d 181, 191 (2d Cir. 2017) ("'The failure to distinguish between contact and possession-only offenders is questionable on its face,' and this failure 'may go against the grain of a growing body of empirical literature indicating that there are significant, § 3553(a)-relevant differences between these two groups.'" (cleaned up) (quoting United States v. Apodaca, 641 F.3d 1077, 1083 (9th Cir. 2011))).

On remand, the parties relied on the entire record in support of their respective positions—including the evidence submitted for the previous two sentencing hearings. This included the testimony of Dr. Steven Peterson, a forensic psychiatrist who evaluated Michael and testified at his original sentencing in November 2016. According to Dr. Peterson, Michael "has [a] significant developmental difficulty called Asperger's Syndrome" and "his psychosexual and psychological development plateaued around [his] early teens." Michael, 909 F.3d at 991–92. Dr. Peterson explained that "a young person with the social delays typically associated with Asperger syndrome is at increased risk for obsessive preoccupation with things on the Internet," including child pornography. Id. at 992. Dr. Bascom W. Ratliff, a clinical social worker and facilitator of Michael's extended sex offender treatment program, testified that relapses in addictive behaviors such as seeking out pornography are to be expected and can be addressed through prevention planning. See id.

In reaching its sentencing decision, the district court referred to what it described as Michael's interest in "child sexual predator" material, concluding that Michael has "deviant attractions to not only sex but also the hurtful, just torturous actions against children." The district court appeared to be relying—at least in part—on Michael's history of watching true crime shows. His probation officer reported that Michael had gotten aroused by "a television show involving sex crimes against children." Because neither party offered any further description of this show, however, there is no evidence that it depicted the torture of children. Moreover, Dr. Peterson explained that Michael's "preoccupation" with certain hobbies, such as watching "multiple law-enforcement themed television shows," was a symptom of his Asperger's syndrome. And the government does not dispute Dr. Peterson's testimony that Asperger's syndrome does not "in and of itself" increase the risk of committing a sexual contact offense against a child. There is nothing in the record to explain how Michael's interest in a non-pornographic television show creates or increases the risk that he would actually assault a child.

Nor does the "Youthful Prey" book that Michael bought shortly before his original sentencing hearing in November 2016 bear the weight that the district court placed on it. Dr. Peterson, Michael's witness at sentencing, agreed that the content of the book was "troubling" but was of the view that Michael was interested in the "true crime" nature of the book, not anything sexual. And Dr. Ratliff testified that after talking with Michael, he felt that Michael understood he had shown poor judgment in buying it. Indeed, Michael demonstrated that understanding when he asked his father to pre-approve his book purchases in the future. There is no evidence that Michael has purchased or sought any similar books since that time.

The district court also relied on Michael's recent history of suicidal ideation and his heightened level of anxiety to conclude he posed a grave risk of danger to the public. The district court reasoned that "someone that . . . has a helpless, hopeless, high level of despair poses an independent risk to not only himself . . . but to the community with the despair aspect of their thinking." The record supports a finding that Michael was at times a risk of harm to himself. But I see nothing in the record to indicate that Michael's thoughts of suicide or struggles with anxiety ever created a risk of harm to anyone else. As to his suicidal ideation in particular, the record indicates that it was "mild" and that it materialized after his misconduct was discovered, stemming from his distress regarding possible imprisonment and his fear that he would not be able to overcome his pornography addiction. No evidence suggests that the conduct underlying Michael's offense and probation violations was ever preceded by or correlated with suicidal or despairing thoughts.

As the court points out, the district court cited several other reasons why it believed Michael posed "a grave risk to the community." For example, the district court noted that Michael accessed adult pornography and drove to stores that sell pornographic materials (but did not go in). The district court cited this fact as evidence that Michael "remain[ed] in a sexually deviant cycle as a result of his continued use of pornography," and expressed concern that his behavior was

"escalating." However, while this behavior may speak to whether Michael might reoffend by accessing child pornography, it does not indicate that he is likely to commit a sexual contact offense against a child. Other factors cited by the district court also fail to support this latter inference. As to his drinking, there is no evidence in the record that Michael continued to consume alcohol after he was instructed to stop. Nor is there any evidence that his dishonesty about his sexual partners demonstrates an increased likelihood that he will commit a contact sexual offense against a child. The fantasies about children, while unsettling, were not new: Michael's probation officer had presented this information to the district court a full two years prior, and there was no evidence presented that such fantasies persisted.

Ultimately, no evidence was offered in the proceedings below that Michael ever assaulted or attempted to assault a child, or that he purposely approached children or frequented locations where children gather in an effort to seek them out. Jenkins, 854 F.3d at 191 ("Whether a child pornography offender has had or has attempted to have contact with children is an important distinction."). On remand, Michael cited a study demonstrating that only a small percentage of child pornography offenders like himself are arrested or convicted of a sexual contact offense. See U.S. Sent'g Comm'n, Federal Child Pornography Offenses 300 (Dec. 2012) (finding that 3.6%—or 22 out of 610—of child pornography non-production offenders studied were subsequently arrested for or convicted of sexual contact offenses).[5] And according to the evidence presented, that risk was likely even lower for Michael: the results of his psychiatric evaluation did not indicate that he has any traits associated with antisocial personality disorder, which the Sentencing Commission has suggested is a strong predictor of sexual contact offenses committed

---

[5]A 2021 Report found that of 1,093 non-production offenders released from incarceration or placed on probation in 2015, 47 (or 4.3 percent) were rearrested for a sex offense within three years. U.S. Sent'g Comm'n, Federal Sentencing of Child Pornography Non-Production Offenses 7 (June 2021). Only 14 offenders (1.3 percent) were arrested for a contact sex offense. Id. at 65.

by child pornography offenders. <u>Id.</u> at 287. The testing also showed that Michael did not meet the diagnostic criteria for pedophilia.

Simple disagreement with a sentence imposed is not grounds for reversal. <u>See</u> <u>Gall</u>, 552 U.S. at 51. I respect the district court's "superior position" when it comes to making the difficult, yet extremely important, decision of what sentence to impose in an individual defendant's case. <u>Id.</u> But we have rejected the idea that our review for substantive reasonableness "is a hollow exercise." <u>Kane</u>, 639 F.3d at 1135. In my view, the primary basis for the sentence imposed in this case on remand was a concern that is unsupported by the record, rendering that sentence substantively unreasonable. <u>See</u> <u>United States v. Dorvee</u>, 616 F.3d 174, 183 (2d Cir. 2010) (concluding that sentence was substantively unreasonable where "district court's apparent assumption that [defendant] was likely to actually sexually assault a child" was "unsupported by the record evidence" yet "plainly motivated the court's perceived need to protect the public" (cleaned up)); <u>see also</u> <u>id.</u> at 184 ("As the Supreme Court made clear in <u>Gall</u>, the amount by which a sentence deviates from the applicable Guidelines range is not the measure of how 'reasonable' a sentence is. Reasonableness is determined instead by the district court's individualized application of the statutory sentencing factors.").

—————————————————