**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 17, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MALACHI MATHIAS MOON
SEALS,

    Defendant - Appellant.

No. 24-1028

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:22-CR-00245-CNS-1)**
_____

Jacob R. Rasch-Chabot, Assistant Federal Public Defender (Virginia L. Grady Federal Public Defender, with him on the briefs), Office of the Federal Public Defender, Denver, Colorado, for Defendant-Appellant.

Jess D. Mekeel, Assistant United States Attorney (Matthew T. Kirsch, Acting United States Attorney, with him on the brief), Office of the United States Attorney, District of Colorado, Denver, Colorado, for Plaintiff-Appellee.
_____

Before **PHILLIPS**, **MURPHY**, and **EID**, Circuit Judges.
_____

**PHILLIPS**, Circuit Judge.
_____

We again address the resentencing procedure that follows a revocation of probation. *See United States v. Moore*, 30 F.4th 1021 (10th Cir. 2022) (*Moore*

*I*); *United States v. Moore*, 96 F.4th 1290 (10th Cir. 2024) (*Moore II*). Malachi Moon Seals makes two arguments. First, for preservation purposes, he argues that this court wrongly decided *Moore I*.[1] Second, he notes that the district court committed error that was plain by not employing the binding two-step framework set forth in *Moore I*, but he does not argue prejudice from that failure. Instead, he argues more specifically that the district court plainly erred by not applying a 0-month sentence at *Moore I*'s first step, and in doing so prejudiced him. But he fails to show that the district court erred, and plainly, by not applying the first step in that fashion. Thus, we do not reach the prejudice prong for his alleged plain error. We affirm.

## BACKGROUND

I.    **Underlying Offenses & Initial Sentencing**

In November 2021, at age eighteen, Malachi Moon Seals began posting threats to governmental representatives and their families on their official websites. Here is a typical example:

> I can't wait to kill both of your families with the lowest levels of honoree [sic] and respect just like you give to this country. I can't wait to shove my rusty machete into their tight little throats and twist like a fork in some pumkin mush.

---

[1] *See In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) (per curiam) ("We cannot overrule the judgment of another panel of this court. We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court.").

R. vol. II, at 11 (citation modified). In other postings, he graphically threatened torture, rape, and murder. The threats frightened some recipients into requesting security details.

A grand jury indicted Moon Seals on six class-C-felony counts charging him with influencing or retaliating against a federal official by threatening that person or family members in violation of 18 U.S.C. § 115(a)(1), and six class-D-felony counts of threatening these persons by using interstate communication in violation of 18 U.S.C. § 875(c). Moon Seals pleaded guilty to all twelve counts.

In its presentence report, the probation office calculated an advisory guidelines range of 33 to 41 months of imprisonment. This resulted from an undisputed total offense level of 20 and criminal-history category of I. That left Moon Seals outside of Zone A of the sentencing table and thus ineligible for probation. *See* U.S.S.G. § 5B1.1(a)(1).[2] But after *Booker* and *Gall*,[3] courts may vary from an advisory sentencing range if doing so is procedurally and substantively reasonable. And aware of this, the parties and probation office

---

[2] The guidelines authorize a "straight" probationary sentence only when the advisory guideline range is 0 to 6 months of imprisonment, which falls in Zone A of the Sentencing Table. *See* U.S.S.G. § 5B1.1(a)(1). Straight probation does not include a "period of community confinement, home detention, or intermittent confinement." *Id.* § 5B1.1 cmt. n.1(A). A probation sentence including those periods is available to offenders whose advisory guideline range is in Zone B. *See* § 5B1.1(a)(2).

[3] *United States v. Booker*, 543 U.S. 220, 226–27 (2005); *Gall v. United States*, 552 U.S. 38, 46 (2007).

advocated for probation. But nowhere did they—or later, did the district court—ever mention varying downward to Zone A of the sentencing table.

In making its pitch for a sentence of probation, the government acknowledged that such a sentence would be "unusual," but it assured the district court that it still was "willing to go out on [a] limb" for Moon Seals. R. vol. III, at 158. The district court was wary, concerned not just about Moon Seals's threats but also about the "severe psychological distress" it saw exhibited in them. *Id.* at 163. Even so, "with severe hesitation," the court relented and sentenced Moon Seals to five years' probation for his twelve convictions. *Id.* at 164. The court imposed special conditions of probation as "100 percent necessary[.]" *Id.* at 168. The court warned Moon Seals that if he made more threats, "[t]he next step" would be revocation of probation and incarceration. *Id.* at 164, 183.

## II.    Probation Violations & Revocation

Moon Seals immediately began serving his sentence of probation. But within two weeks, the probation office petitioned the court for his arrest. It alleged that just days after his sentencing, Moon Seals resumed posting threats. It quoted this newly made threat to a former federal intelligence officer:

> [Name] IS A CRIME AGAINST HUMANITY AND WILL DIE A
> HORRIBLE DEATH LIKE THE PATHETIC FUCKING N[***]ER
> CH[**]K CAMEL TOED SAND EATING SHIT MONKEY HE
> IS!!!!!!!!!! HE'S FUCKING DEAD FUCKING MEAT!!!!! . . . .

4

R. vol. I, at 39–40. For this conduct, the petition alleged two violations of Moon Seals's conditions of probation.

At the hearing on the petition, Moon Seals admitted the two alleged violations. The district court chose to revoke Moon Seals's sentence of probation.

## III.    Resentencing

After revoking probation, the district court needed (1) to "resentence" Moon Seals by 18 U.S.C. §§ 3553(a)(4)(A) and 3565(a)(2), and (2) to sanction him for violating his conditions of probation by 18 U.S.C. § 3553(a)(4)(B) and Chapter 7 of the sentencing guidelines. *Moore I*, 30 F.4th at 1026–27.

At the sentencing hearing, the court asked to "hear from the parties as to the applicable guideline range . . . for [resentencing.]" R. vol. III, at 9. By then, the probation office had already recommended sentencing Moon Seals to the low end of the original advisory guideline range of 33 to 41 months of imprisonment. The probation office never mentioned *Moore I* or its two-step framework.[4] Defense counsel asked that the court start with the Chapter 7 range of 3 to 9 months but volunteered that the court could sentence within 33 to 41 months, or even up to the statutory maximum of 120 months. The government

---

[4] The probation office instead cited an out-of-date case, *United States v. Maltais*, 961 F.2d 1485, 1487 (10th Cir. 1992), in which this court required exclusive application of the original guideline range for the underlying offenses at revocation. Notably, this being a 1992 decision, it obviously did not consider the 1994 statutory amendments relied on in *Moore I*.

"agree[d] with a lot of . . . [defense counsel's] positions on the sentences that are available to the Court today." *Id.* at 27. But it supported the probation office's recommendation of 33 months of imprisonment.

When addressing the court, Moon Seals's counsel referenced *Moore I* but asserted a belief that its holding would likely be reversed by a pending appeal of the sentence imposed on remand. The government had mentioned *Moore I* in its sentencing memoranda, but it didn't defend *Moore I* or apply its framework in making its sentencing recommendation. Though alerted to *Moore I*, the district court paid it no heed.

Instead, the district court went its own way. It rejected Moon Seals's argument that Chapter 7 governed exclusively, saying that this approach would give Moon Seals an "unwarranted benefit" for obtaining and violating probation. *Id.* at 38. Ignoring *Moore I*'s framework, the court pronounced that "[t]o be sure, it appears that I could use either range, and Chapter 7 in some senses may make sense." *Id.* The court said that it was tempted "to just rely on the statutory maximum range and work within that range." *Id.*

Ultimately, however, the court declined to apply Chapter 7 at all, instead "stick[ing] to the 33 to 41 months under the original offenses" set in Chapter 5.

6

*Id.* The district court procedurally erred—and plainly—in disregarding *Moore I*'s binding framework.[5]

## DISCUSSION

We review sentences imposed by the district court for procedural and substantive reasonableness. *United States v. Cookson*, 922 F.3d 1079, 1091 (10th Cir. 2019). Moon Seals argues that his sentence was procedurally unreasonable. Whether a sentence is procedurally reasonable depends on "whether the district court committed any error in calculating or explaining the sentence." *Id.* (quoting *United States v. Friedman*, 554 F.3d 1301, 1307 (10th Cir. 2009)). Moon Seals argues that the district court procedurally erred by not applying *Moore I*'s two-step framework and that had it done so it would have needed to impose a 0-month sentence at step one. Then, contending that the sentence he received was greater than his likely sentence had the district court imposed 0 months at step one, he claims prejudice at the third prong of the plain-error analysis.

Because *Moore I* is central to this appeal, we begin by reviewing that decision and its bases. After doing so, we consider and reject Moon Seals's

---

[5] At the hearing, defense counsel contended that *Moore I*'s two-step procedure was dicta. But in *Moore II*, we later rejected that argument, concluding that the "two-step process is not dicta but is, instead, binding Tenth Circuit precedent." *Moore II*, 96 F.4th at 1301.

argument that the district court committed plain error by not imposing a 0-month sentence at the first step of the *Moore I* framework.

## I.    *Moore I* and Its Binding Framework

In *Moore I*, we considered an appeal arising after the district court imposed an unusual sentence of probation and later revoked it. *See Moore I*, 30 F.4th at 1023–24. The defendant had pleaded guilty to a Hobbs Act robbery during which he had pointed a firearm at a liquor-store clerk. With an agreed advisory sentencing range of 51 to 63 months of imprisonment, the government sought a low-end sentence of 51 months. *Id.* at 1022–23. The defendant asked for time served and three years of supervised release. *Id.* at 1023. The district court gave the defendant a choice—(1) an immediate 51-month sentence as calculated after the court had already fully considered the PSR, or (2) a six-month trial period of release followed by a three-year term of probation if the six months went well. *Id.* The defendant chose the sentence of probation, despite the court's warning him that it held a "big hammer" and that it would sentence him to at least 84 months if he violated probation. *Id.* When the defendant did violate, the court revoked his probation and resentenced him to 84 months. *Id.* at 1023–24.

We reversed. First, we held that sentencing after revoking probation requires two steps: (1) the district court must "resentence" the defendant for his underlying offense as required by 18 U.S.C. §§ 3553(a)(4)(A) and 3565(a)(2), and (2) the district court must sanction the defendant for violating his

8

conditions of probation as required by 18 U.S.C. § 3553(a)(4)(B) and Chapter 7 of the sentencing guidelines. *Id.* at 1026–27. Second, we ruled that the district court, after fully reviewing the PSR and announcing the precise 51-month sentence it felt that the PSR justified, had locked itself into 51 months as the appropriate term of imprisonment for the offense of conviction and its underlying conduct. *Id.* at 1026. And third, we noted that after revoking probation, the district court had never identified what portion of its 84-month sentence was for the original offense and what portion was for the probation violation. *Id.* at 1027. Because the total sentence happened to be the exact 84 months the district court had promised as the minimum if the defendant violated probation, we concluded that the court had erred "by employing [a] sentence-in-advance system." *Id.* at 1025. The problem was that the court could not foreordain and punish probation-violation conduct before it occurred. Also, we stressed that the court had procedurally erred by not identifying what portion of the 84 months was for the original offense versus the probation violation. *Id.* at 1027. That deprived us of an ability to meet our duty to review each piece for substantive reasonableness. *Id.*

The defendant sought neither panel rehearing nor en banc review. Instead, he returned to the district court for resentencing, still not objecting to *Moore I*'s two-step framework. But after the resentencing, he again appealed and moved for en banc review in challenging *Moore I*. We denied his motion. *United States v. Moore*, 119 F.4th 1232 (10th Cir. 2024) (mem.).

9

II.    **Moon Seals's Arguments**

On appeal, Moon Seals makes two arguments. First, he contends that the district court plainly erred in crafting his post-revocation sentence. Second, for preservation purposes, he comprehensively argues that *Moore I* was wrongly decided.

A.    **Argument One: The District Court Plainly Erred by Imposing a Procedurally Unreasonable Sentence of 36 Months of Imprisonment**

On appeal, Moon Seals begins with an obvious point—the district court committed error that was plain by not employing *Moore I*'s binding framework in imposing its sentence.[6] But he does not argue that this *general* plain error prejudiced him at prong three of the plain-error analysis. Presumably, he acknowledges that he could not show a reasonable probability of a different outcome to his 36-month sentence when the advisory range for his offenses of conviction was 33 to 41 months and his sanction range for his probation violations was 3 to 9 months. Under a straight application of *Moore I*, his 36-

---

[6] Moon Seals acknowledges that he encouraged the district court to disregard *Moore I*'s two-step procedure. Because he did so, the government in its appellate briefing claimed invited error. But at oral argument the government conceded that this case "rises and falls" on plain-error review. Oral Arg. at 27:25–27:40. So we don't further address the invited-error doctrine. Additionally, we disagree with the government's contention that Moon Seals's general appeal waiver in his plea agreement waived his appellate challenges to his post-revocation sentence. *See United States v. Porter*, 905 F.3d 1175, 1179 (10th Cir. 2018).

month sentence would fall within the Chapter 5 guideline range used by the district court.[7]

Instead, Moon Seals makes a more specific plain-error argument. He argues not just that the district court plainly erred by not applying *Moore I*'s two-step framework but that its sentence would be plain error even under *Moore I*'s framework. He contends that the district court at step one of *Moore I*'s framework plainly erred by not imposing a 0-month sentence for his underlying offenses of conviction.[8]

Moon Seals supports his view with his own novel theory—that a 0-month sentence applies when at the original sentencing hearing a district court fails to provide an "alternative sentence" that will later apply if it revokes the sentence of probation. Op. Br. at 16. For support, he extrapolates from *Moore I*, in which

---

[7] Though it may be a coincidence, we note that the 36-month sentence equals the total of the low ends of the Chapters 5 and 7 sentencing ranges—33 and 3 months. The government has not appealed what amounts to the district court's 0-month sentence under Chapter 7 for Moon Seals's probation violation.

[8] Moon Seals's argument gets loose here. He explicitly briefs how the district court's not employing *Moore I* is error and plain error. But for the district court's not calculating and applying a 0-month sentence at *Moore I*'s first step, he jumps to the prejudice prong of the plain-error analysis without specifically analyzing the first two prongs of the plain-error standard. From our vantage point, he appears to be trying to incorporate the district court's general plain error to cover the needed plain error for not applying a 0-month sentence. If not, we see him as sidestepping the need to show plain error for not calculating a 0-month sentence at *Moore I*'s first step. The closest he comes to doing so is when he declares that "it stands to reason" that *Moore I* compels a finding that the district court locked itself into a 0-month sentence. *See* Op. Br. at 8. But as described in this opinion, Moon Seals has not shown error or plain error in this regard.

11

the district court happened to offer a low-end sentence of 51 months for the defendant's Hobbs Act conviction in lieu of a probation sentence. *Id.* (citing *Moore I*, 30 F.4th at 1026).

We disagree that the district court plainly erred by not imposing a 0-month sentence at *Moore I*'s step one using Moon Seals's "alternative sentence" theory. First, we see no reason why it should matter when a district court announces a prison sentence for the offenses of conviction, whether before or after a probation revocation. Moreover, *Moore I* does not contemplate Moon Seals's "alternative sentence" theory. Simply put, *Moore I* doesn't contain what Moon Seals now tries to pull from it—a rule stating that absent the district court's adoption of a low-end sentence of 51 months for the offenses of conviction, the district court would be bound to impose a 0-month sentence for the original crimes after the defendant violated probation.

Second, Moon Seals's argument that the district court locked itself into a 0-month sentence for his offenses of conviction ignores important considerations. For instance, the district court knew that it was imposing a *conditional* sentence of probation and contemplated imposing prison time for the offenses of conviction if Moon Seals violated his probation conditions (as was also the case with the district court in *Moore I*). Had the district court wanted to give Moon Seals a 0-month sentence, it could have done so and followed it with a term of supervised release. Further, even if the district court had somehow inadvertently locked itself into a Zone A sentence by varying to

12

probation, the sentencing range would be 0 to 6 months, not an ironclad 0 months.

Third, Moon Seals's argument that the district court locked itself into a 0-month sentence for his offenses of conviction makes little sense. As the district court observed, using the Chapter 7 sentencing range alone would have given Moon Seals an unwarranted benefit for obtaining and violating probation. The sanction for violating probation is one that is *in addition to* the resentencing prison time for the underlying offenses. *See United States v. Shaefer*, 120 F.3d 505, 507 (4th Cir. 1997) (Wilkins, J.) (a "resentencing" under § 3565(a)(2) "plainly permits a district court *to begin the sentencing process anew* and to impose any sentence appropriate under the provisions of subchapter A, *i.e.*, one that satisfies statutory and guideline requirements." (emphasis added)).[9]

---

[9] Though Moon Seals says that no court has ever employed a two-step framework as *Moore I* does, he does not acknowledge Judge Wilkins's above comment in *Shaefer*. And our research shows that most probation-revocation resentencings have contained at best a cursory analysis on the sentencing steps. *See United States v. Huffman*, No. 22-4165, 2023 WL 4700644, at *2 (4th Cir. July 24, 2023) (unpublished) (per curiam); *United States v. Vanover*, 831 F. App'x 71, 74 (4th Cir. 2020); *United States v. Arnold*, 810 F. App'x 337 (5th Cir. 2020) (per curiam); *United States v. Buckholt*, 799 F. App'x 252, 253 (5th Cir. 2020); *United States v. Spierdowis*, 805 F. App'x 1025, 1027 n.2, 1029 (11th Cir. 2020) (per curiam); *United States v. Randall*, 796 F. App'x 916, 917 (8th Cir. 2019) (per curiam); *United States v. Quiroz-Leon*, 749 F. App'x 584 (9th Cir. 2019); *United States v. Michael*, 909 F.3d 990, 993–94 (8th Cir. 2018) (per curiam); *United States v. Mewhinney*, 643 F. App'x 803, 805 (10th Cir. 2016); *United States v. Lutui*, 531 F. App'x 812, 813 (9th Cir. 2013); *United States v. Silva*, 443 F.3d 795, 799 (11th Cir. 2006) (per curiam); *United States*

(*footnote continued*)

13

Fourth, at the second prong of the plain-error analysis, Moon Seals must show that his asserted error is plain. To do so, he depends exclusively on *Moore I*, but, as stated, *Moore I* does not announce or even support his "alternative sentence" theory. His asserted error is not plain. His failure to establish either prong one or two of the plain-error standard defeats his procedural-unreasonableness argument.

**B.    Argument Two: *Moore I* Was Wrongly Decided**

Next, Moon Seals argues that *Moore I* was wrongly decided. But he makes this argument for preservation purposes. Accordingly, at this time, we do not address it further.

**CONCLUSION**

Exercising our jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm the post-revocation sentence.

---

*v. Garfinkle*, 162 F.3d 1174 (10th Cir. 1998) (unpublished table opinion). None thoroughly discuss the legislative history that we considered in *Moore I*. Even the more analyzed cases do not delve into the legislative history in detail. *See United States v. Michael*, 12 F.4th 858, 860–61 (8th Cir. 2021); *United States v. Vixamar*, 679 F.3d 22, 32 (1st Cir. 2012); *United States v. Kippers*, 685 F.3d 491, 496–501 (5th Cir. 2012); *United States v. Verkhoglyad*, 516 F.3d 122, 130 (2d Cir. 2008); *United States v. Cook*, 291 F.3d 1297, 1299–1302 (11th Cir. 2002); *United States v. Plunkett*, 94 F.3d 517, 517–19 (9th Cir. 1996); *see also United States v. Schwegel*, 126 F.3d 551, 553–55 (3d Cir. 1997) (interpreting the Wilkins-Thurmond congressional record in context of supervised-release revocation).

24-1028, *United States v. Moon Seals*
**MURPHY**, J., concurring in the result.

I agree Moon Seals failed to demonstrate the district court plainly erred when it refused to impose a zero-month sentence at the first step of *Moore I*'s framework. Specifically, I agree the district court committed an error that is plain when it failed to apply *Moore I*'s two-step sentencing procedure. Nevertheless, Moon Seals failed to show the error affected his substantial rights. To do so, Moon Seals asserts "his own novel theory—that a 0-month sentence applies when at the original sentencing hearing a district court fails to provide an 'alternative sentence' that will later apply if it revokes the sentence of probation." Majority Op. at 11. The Majority Opinion rightly rejects this "novel claim"; *Moore I* cannot reasonably be read as standing for such a counterintuitive and unworkable rule. Because the district court was not locked into a zero-month sentence at the first step of *Moore I*, the imposition of a within-Guidelines sentence at that step did not affect Moon Seals's substantial rights. Instead, Moon Seals obtained an unwarranted benefit when the district court erroneously failed to impose a sentence for the probation violation at *Moore I*'s second step. *But cf.* Majority Op. at 11 n.7 (noting the government did not bring a cross appeal for "what amounts to the district court's 0-month sentence under Chapter 7 for Moon Seals's probation violation").

24-1028, *United States v. Moon Seals*
**PHILLIPS**, J., concurring in the opinion.

Though Moon Seals challenges *Moore I* as wrongly decided, he acknowledges that the decision binds this panel. He raises his challenge to preserve it for further review. I write separately to address Moon Seals's comprehensive arguments against *Moore I* in view of the likelihood of further challenges built on doubts expressed by a different panel in *Moore II*, 96 F.4th at 1302 (noting that if it were deciding the correctness of the two-step sentencing procedure "as one of first impression," the panel "might very well conclude" that "the relevant statutes and Sentencing Guidelines call for a different result"). I support *Moore I* by reviewing the lead-up to the relevant statutory changes it interpreted and then examine and reject Moon Seals's arguments calling for a different interpretation.

I.     **Events and Law Leading Up to *Moore I***

In 1984, Congress enacted the Sentencing Reform Act, Pub. L. No. 98-473, § 211, 98 Stat. 1987 (codified as amended at 18 U.S.C. § 3551 *et seq.*). It sought to make federal sentencing more uniform and proportional. *See* U.S.S.G. ch.1, pt. A, 1.3. Under the Act, probation became its own sentence, though a conditional sentence subject to revocation. *See* 18 U.S.C. § 3564 (1984).

The first seismic event in applying the post-1984 statutes governing probation revocations came with *United States v. Smith*, 907 F.2d 133 (11th

Cir. 1990).[1] There, a defendant pleaded guilty to possessing counterfeit currency in violation of 18 U.S.C. § 472. *Id.* at 134. Because his offense occurred after November 1, 1987, that version of the sentencing guidelines applied at sentencing. For the defendant's offense, the applicable guideline provided a base offense level of 9. *Id.* Two more offense levels were added for the defendant's aggravating role as an organizer of the "two-person scheme to pass counterfeit bills[.]" *Id.* Because he timely pleaded guilty, the defendant received a 2-level reduction for acceptance of responsibility. All told, that left a total offense level of 9 and a criminal-history category of I, which resulted in a then-mandatory guideline range of 4 to 10 months. *Id.* Because the four-month minimum term did not exceed six months, the defendant was eligible for a sentence of probation with a term of community confinement. *Id.* The court imposed a sentence of three years of probation, with four months to be spent at a community treatment center. *Id.* As a condition of probation, the court required that the defendant remain drug-free. *Id.*

While at the community center, the defendant failed two drug tests. *Id.* For that misconduct, the probation office petitioned the court to revoke the sentence of probation. *Id.* In revoking probation, the court observed that the sentencing guidelines gave it no direction on how to resentence after revocation

---

[1] *Superseded by statute as recognized in United States v. Cook*, 291 F.3d 1297, 1300 n.3 (11th Cir. 2002).

2

of probation.[2] *Id.* Left on its own, the court defaulted to "the statutory maximum for the underlying offense[.]" *Id.* (citation modified). After that, the court "implicitly adopted the probation officer's recommendation and imposed a prison term of eighteen months," the top end of the mandatory guideline range after the probation officer updated its recommendation to add four more offense levels for the defendant's post-sentencing possession of controlled substances in violation of his probation conditions. *Id.* at 134–35. The defendant appealed the district court's 18-month sentence.

The Eleventh Circuit reversed. In a "case of first impression," it determined that the district court had erred in two ways: "(1) by holding that the guidelines do not apply to probation revocation proceedings and (2) by imposing a prison sentence (eighteen months) that exceeded the one originally available under the guidelines at the time of initial sentencing (four to ten months)." *Id.* at 135. In reaching this result, the court relied on the 1988 version of 18 U.S.C. § 3565, quoting it as follows:

> (a) Continuation or Revocation. If the defendant violates a condition of probation at any time prior to the expiration or termination of the term of probation, the court may, after a hearing pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure, and after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent they are applicable-

---

[2] The initial 1987 sentencing guidelines contained a brief Chapter 7 pertaining to probation and supervised-release violations and sanctions. *See* U.S.S.G. app. C, amend. 362. On November 1, 1990, a more robust Chapter 7 became effective, but which was after the *Smith* sentencing hearing. *Id.*

3

> (1) continue him on probation, with or without extending the term [or] modifying or enlarging the conditions; or
>
> (2) revoke the sentence of probation and *impose any other sentence that was available under subchapter A [18 U.S.C. §§ 3551–3559] at the time of the initial sentencing.*

*Id.* From the language it italicized, the Eleventh Circuit concluded that "the district court was required to apply the guidelines" and that the original guidelines calculation "delimit[ed] the sentences that were then available." *Id.* That was so because the probation-violating conduct necessarily occurred after the original sentencing hearing. *Id.* With that, the court concluded that "no upward adjustment in [the defendant's] total offense level could have been based on that conduct, and the longer sentence of imprisonment [anything beyond the ten-month, high end of the original mandatory guidelines range] resulting from such an adjustment was therefore not 'available.'" *Id.* (citation modified).

So as *Smith* stated it, the district court could "impose a new sentence *within* the applicable range prescribed by law, *i.e.*, statute and guidelines, at the time of initial sentencing-in this case, within a range of four to ten months." *Id.* at 136. Otherwise stated, the district court could independently consider the probation violation and penalize it with any time not yet imposed for the original offense up to the top end of the then-mandatory guideline range. *Id.*

The *Smith* decision set off alarm bells in the office of Judge William W. Wilkins, the first and then-acting Chairman of the United States Sentencing

4

Commission. Just twenty-five days after the *Smith* decision, Judge Wilkins sent a letter to Senator Strom Thurmond, the Ranking Member of the Committee on the Judiciary.[3] *See* 136 Cong. Rec. 28230 (1990). Spotlighting *Smith*, Judge Wilkins sought Congress's help by asking Senator Thurmond to try to enact a "proposed clarification of the statute on revocation of probation to ensure this sanction will also be applied consistent with Congressional intent."[4] *Id.* He sought "minor modifications to 18 U.S.C. § 3565, pertaining to revocation of probation, and to 18 U.S.C. § 3553, pertaining to factors to be considered by courts in the imposition of sentence." *Id.*

Judge Wilkins wanted statutory amendments to override *Smith* and "to promote an interpretation that is consistent with Congressional intent, under the Sentencing Reform Act." *Id.* His legislative fix had two aims: (1) to allow district courts to impose *incremental* punishment for probation beyond the top end of the then-mandatory guideline range for the offenses of conviction violations (via his proposed § 3565(a)(2) amendment), and (2) to give statutory authority to district courts to implement the soon-coming, more robust

---

[3] The Sentencing Reform Act of 1984 had bipartisan backing. Senate co-sponsors included Senators Edward M. Kennedy, Joseph R. Biden, and Orrin Hatch. *See United States v. O'Neil*, 11 F.3d 292, 300 (1st Cir. 1993).

[4] Here, by "also," Judge Wilkins referenced his letter to Senator Thurmond just a month earlier about needed statutory amendments for supervised release. For the reader's ease of reference, I attach Judge Wilkins's two letters and Senator Thurmond's responses to his Senate colleagues to this concurring opinion. 136 Cong. Rec. 28228–32.

November 1, 1990 version of Chapter 7 of the sentencing guidelines (via his proposed amendment creating § 3553(a)(4)(B)). Though Judge Wilkins disagreed with *Smith*'s reasoning and result, he conceded that "while we believe the Eleventh Circuit decision is plainly contrary to sound policy and congressional intent, we cannot say it is an implausible reading of the statute [§ 3565(a)(2)] or that other courts may not come to a similar conclusion." *Id.*

As for *Smith*'s barring district courts from sanctioning probation violations beyond the top end of the mandatory guideline range for the offenses of conviction, Judge Wilkins asked Senator Thurmond to delete the § 3565(a)(2) text that *Smith* thought dispositive, that is, the statute's direction to "impose any other sentence that was available under subchapter A [18 U.S.C. §§ 3551–3559] at the time of the initial sentencing." *Id.* Judge Wilkins proposed substituted language directing the court to "resentence the defendant under the provisions of subchapter A of this chapter [18 U.S.C. §§ 3551–3559]." *Id.*

The legislative history precisely shows that Congress, in coordination with Judge Wilkins's advice, created the two-step sentencing procedure set forth in *Moore I*. As shown by the below quotations from Judge Wilkins's 1990 letter to Senator Thurmond, Judge Wilkins saw his two proposed amendments as needed to secure a two-step sentencing procedure after revocations of probation. At the first step, the Chapter 5 guideline for the original offense of conviction would remain in place. At the second step, the Chapter 7 policy

6

statement for the probation violation would apply even if it extended the defendant's sentence above the top end of the mandatory guideline for the offenses of conviction. Judge Wilkins's correspondence leaves no doubt that his object was to *separate* Chapter 5 and Chapter 7, not to *merge* them (as Moon Seals would now have it):

- "The clarifying language will provide that revocation decisions are to be based upon sentencing guidelines and policy statements issued by the Commission specifically for that purpose, thereby negating any implication in current statutory language [*see Smith*] that the guidelines applicable to the initial sentencing of defendants also apply to probation revocation decisions." *Id.*

- "Since the Commission is instructed under 28 U.S.C. § 994(a)(3) to issue guidelines or policy statements for the revocation of probation and supervised release, we believe Congress clearly intended that these guidelines or policy statements, rather than those applicable to initial sentencing, be used by courts when sanctioning probation (or supervised release) violators." *Id.* Judge Wilkins continued this thought by contrasting *Smith*'s rule as one that "constrains the court when it revokes probation" and permits only "a sentence . . . within the guideline range applicable to the defendant's initial sentencing decision." *Id.* Judge Wilkins also disagreed with *Smith*'s rule "interpret[ing] the statute [§ 3565(a)(2)] to preclude a court from considering the probation violation itself as a basis for sentencing above the original guideline range applicable at the defendant's initial sentencing." *Id.*

- Seeking to ensure a meaningful incremental sanction for a probation violation, Judge Wilkins stated that "[a]s a result of the [*Smith*] court's holding, courts in the Eleventh Circuit will be constrained by a guideline range that, in our view, will be inadequate to sanction probation violations appropriately in many cases. Additionally, in some cases (for example, those in which the defendant was sentenced to probation with a condition of jail confinement for a period of time) a defendant will be subject to little or no imprisonment sanction even where there was a serious breach of probation conditions." *Id.*

7

- Judge Wilkins sought "to remove any doubt that these pronouncements—not those applicable to initial sentencing decisions—are the appropriate reference for revocation purposes." *Id.*

On the separate point of district courts' future access to the upcoming Chapter 7 policy statements, which were set to become effective on November 1, 1990, Judge Wilkins expressed concern that *Smith*'s rule would "impede Commission plans to implement a system of policy statements for revocation decisions, preparatory to issuing guidelines for revocation at a future date." *Id.* He declared that "*Smith* would appear, however, effectively to block courts in that circuit from using these [upcoming Chapter 7] policy statements for probation revocation decisions." *Id.* To avoid *that*, he proposed amending § 3553(a)(4) by adding a subsection (B) reading as follows: "or (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)(3)." *See id.*

Obviously agreeing with Judge Wilkins, Senator Thurmond sought the amendments to §§ 3553(a)(4)(B) and 3565(a)(2) that Judge Wilkins had proposed. So, first, Senator Thurmond sought to replace the language from § 3565(a)(2) that *Smith* depended on—"impose any other sentence that was available under subchapter A at the time of the initial sentencing"—with Judge Wilkins's proposed language: "resentence the defendant under the provisions of subchapter A of this chapter." *Id.* at 28231. In his "Explanation of Probation Revocation Proposal," Senator Thurmond advised his colleagues that *Smith* had

8

"erroneously construed" the "at the time of initial sentencing" language "to mean a sentence in accordance with the sentencing guidelines applicable at initial sentencing of the defendant." *Id.* Also advocating the two-step procedure that *Moore I* later incorporated, Senator Thurmond contrasted the substitute text as "permit[ting] courts to resentence a defendant whose probation sentence is revoked to *another* statutorily authorized sentence—i.e., a sentence authorized under sections 3551–3559 of title 18." *Id.* (emphasis added). He declared that a "resentenc[ing]" was needed because "under the Sentencing Reform Act [of 1984], probation is a sentence; therefore, when a probation sentence is revoked, the defendant must be 'resentenced.'" *Id.* Thus, Senator Thurmond's proposed amendment would, and later did, solve Judge Wilkins's first problem with *Smith*.

Second, Senator Thurmond sought to amend § 3553(a)(4) by adding the above-referenced subsection (B) "to provide a direct reference to Sentencing Commission guidelines or policy statements applicable to revocation decisions." *Id.* As he stated it, "[t]he proposed amendment makes it clear that it is the guidelines or policy statements issued specifically to guide revocation decisions, and *not* the guidelines and policy statements applicable at initial sentencing, that govern court decisions when considering violations of probation or supervised release." *Id.* (emphasis added). He noted that the "[c]urrent statutory language in section 3553 contains no reference to guidelines or policy statements issued by the Commission pursuant to 28

9

U.S.C. § 994(a)(3), the paragraph authorizing and directing the Commission to promulgate guidelines or policy statements for the revocation of probation and supervised release." *Id.* So the amended text would provide the needed "analogous directive in section 3553 requiring court consideration of these particular guidelines or policy statements." *Id.* Once again, Senator Thurmond tracked Judge Wilkins's requested changes and his reasoning for them. *Moore I* incorporates this direction.

## II.    Moon Seals's Arguments against *Moore I*

As shown next, *Moore I* followed the direction and reasoning of Senator Thurmond and Judge Wilkins in its interpretation of the amendments to 18 U.S.C. §§ 3553(a)(4)(B) and 3565(a)(2) as enacted into law in 1994.[5] As I understand Moon Seals, he makes the following arguments, each of which I would reject.

### A.    Chapter 7 Subsumes Chapter 5

According to Moon Seals, *Moore I* mistakenly requires two steps in the resentencing proceeding (the first at Chapter 5 and the second at Chapter 7) rather than just one step (at Chapter 7 alone). In effect, Moon Seals argues that

---

[5] Congress enacted Senator Thurmond's proposed amendments in the Violent Crime Control and Law Enforcement Act of 1994 (VCCA), Pub. L. No. 103-322, 108 Stat. 1796. Though it took multiple tries before Congress passed Senator Thurmond's amendments, the proposed statutory amendments remained substantively the same throughout these tries. The legislative history also remained consistent. *See* 137 Cong. Rec. 14821–24 (1991); 139 Cong. Rec. 3762–63 (1993).

10

Senator Thurmond's 1994 amendments eviscerated Chapter 5 whenever a district court imposes and later revokes a sentence of probation. For several reasons, this argument lacks merit.

First, as seen, the studied words of Judge Wilkins and Senator Thurmond show that they did not eliminate Chapter 5 in the probation-revocation setting in favor of an all-consuming Chapter 7.[6] To the contrary, they *separated* the two punishments rather than fusing them into an indistinguishable lump. They reserved authority to the district courts to impose an *incremental* sanction for a probation violation above the *then-mandatory* Chapter 5 sentencing guideline range for the offense of conviction. They did not favor a nonsensical result of *rewarding* a probation violator with a substantially reduced guideline range for violating their conditions of probation. Instead, the 1994 statutory amendments were drafted and enacted to overcome the Eleventh Circuit's decision in *Smith*, which had *blocked* incremental probation-violation sanctions exceeding the top end of the guideline for the offense of conviction.

---

[6] In a single sentence, Moon Seals claims that legislative history supports his Chapter 7, one-step sentencing procedure, but he does not back this with any analysis. Op. Br. at 9, 11, 13. His sole other reference to legislative history is from his citation to *United States v. Schwegel*, 126 F.3d 551, 554–55 (3d Cir. 1997). Op. Br. at 11–12. But that case simply addressed whether § 7B1.4's ranges for supervised-release violations were mandatory or advisory. Because Chapter 7 contains policy statements and not guidelines, the court correctly held that the Chapter 7 ranges were advisory. *Id.* at 552–53. Thus, the court in *Schwegel* referenced the legislative history for a different point than Moon Seals does and not in a way that helps him.

11

Second, even apart from the statutory text and legislative history, Chapter 7 itself refutes Moon Seals's argument. In the November 1, 1990, Introduction to Chapter 7—which remains intact—the Sentencing Commission opted for a breach-of-trust approach to probation violations. In part, it reasoned that "the sanction for the violation of trust should be in addition, or consecutive, to any sentence imposed for the new conduct." U.S.S.G. ch. 7, pt. A, 3(b). Nothing there suggests that, in the probation-revocation setting, Chapter 5 vanishes and leaves Chapter 7 as the sole permissible sentencing mechanism. Elsewhere, the Introduction provides that "[t]he grade of the violation, together with the violator's criminal history category calculated at the time of the initial sentencing, fix *the applicable* sentencing range." *Id.* ch.7, pt. A, 4 (emphasis added).[7] The "applicable sentencing range" is the probation-violation range found at § 7B1.4's sentencing table alone.

Third, Moon Seals's argument that the district court could sentence using Chapter 7 exclusively while retaining discretion to vary upward by relying on the Chapter 5 range lacks merit for at least two reasons: (1) we could not meaningfully review such a sentence not knowing which portion was assessed for the offense of conviction and which portion was assessed for the probation

---

[7] The best that Moon Seals can cite otherwise is § 7B1.3(b), which provides as follows: "In the case of a revocation of probation or supervised release, the applicable range of imprisonment is that set forth in § 7B1.4 (Term of Imprisonment)." But this simply recognizes that the Chapter 7 sanction is calculated independently of the Chapter 5 term of imprisonment for the underlying offenses of conviction, not that Chapter 5's prison time disappears.

12

violation; and (2) we could not as needed apply the two different standards of review for substantive reasonableness under Chapter 5 and under Chapter 7 if called on to review a fused sentence like the one imposed in Moon Seals's case. The problem is that we defer less when reviewing Chapter 5 prison terms than we do when reviewing prison terms under Chapter 7's policy statements. *See United States v. Vigil*, 696 F.3d 997, 1002–03 (10th Cir. 2012) ("[A] court does not need to find severe or exceptional circumstances to impose a sentence above the range suggested in the Chapter 7 policy statements, which are not mandatory and even less compelling than established Guidelines.").

Fourth, Moon Seals does not credit the importance of the sentencing guidelines being mandatory in 1994 when the Wilkins-Thurmond amendments were enacted. Congress amended § 3565(a)(2) for one stated reason alone—to overcome *Smith*'s limitation on district courts' ability to sanction probation violations. But if courts had adopted Moon Seals's interpretation of the 1994 statutory amendments before *Booker* was decided in 2005, the courts could have resentenced probation-violating defendants exclusively under Chapter 7's policy statements all the way up to the statutory maximum—so to a term of imprisonment far exceeding the Chapter 5 mandatory-guidelines range for the offense of conviction. That would not have comported with the pre-*Booker* mandatory-guideline regime.

13

Fifth, despite Moon Seals's objections to a two-step system, any sentencing after a probation revocation functionally requires two steps.[8] For instance, even in *Smith*, the district court was required to impose its Chapter 5 sentence within the mandatory guideline range and then consider additional time if available for the Chapter 7 violation. And even in Moon Seals's case, the district court at least considered a Chapter 7 sanction before erroneously electing to disregard Chapter 7 entirely. The question isn't whether a district court must take two steps—it must—but is whether the district court must show its sentencing work at each step so that we can meet our duty to meaningfully review the prison time imposed at each step for procedural and substantive reasonableness.

Sixth, despite Moon Seals's contrary position, when a district court follows *Moore I*'s two-step framework and calculates a Chapter 5 sentence for the offense of conviction and a Chapter 7 sentence for the probation violations, it has not imposed two sentences. The court cumulates the prison time for each and imposes that as the total sentence shown in the judgment. *See Pepper v.*

---

[8] Cases that purport to apply only the Chapter 7 range do so in name only. They migrate from Chapter 7 by falling back on the Chapter 5 guideline range for the underlying offenses in affirming sentences that are well beyond the Chapter 7 ranges. *See Michael*, 12 F.4th at 860–61; *Kippers*, 685 F.3d at 500–01; *Verkhoglyad*, 516 F.3d at 130 & n.5, 134; *Huffman*, 2023 WL 4700644, at *1–*2. *Moore I* requires district courts to show their work by separately considering the offense conduct (anchored to its applicable range) and the probation-violation conduct (also anchored to its applicable range), rather than nominally fusing them together under one range that does not estimate the distinct conduct.

*United States*, 562 U.S. 476, 507 (2011) ("A criminal sentence is a package of sanctions that the district court utilizes to effectuate its sentencing intent.").

### B.    The "or" Preceding Section 3553(a)(4)(B)

Moon Seals contends that by adding an "or" and not an "and" between § 3553(a)(4)(A) and (B), Congress meant to limit district courts at revocation to either Chapter 5 or to Chapter 7, not to both. But this view also suffers fatal defects.

First, again as seen from his written words, Senator Thurmond proposed that Congress add subsection (B) to § 3553(a)(4) for a single reason—to provide a statutory basis for district courts to apply Chapter 7 to probation violators. Nothing hints that he meant to disrupt the uniform and proportionate sentencing reforms as Moon Seals's reading of the "or" would do.

Second, the statute could not be drafted to read "and" instead of "or" when many probationers don't violate their conditions and many convicted defendants who have served their prison sentence do not violate their supervised release. For offenders who violate, district courts take a lap around subchapter A for the offense of conviction and later another lap for the supervision violation (whether of probation or supervised release).

Third, the "or" helps direct district courts to different sources of law that govern a sentencing for the offenses of conviction versus those that govern a sanction for violating probation, with § 3553(a)(4)(A) pointing to Chapters 1

15

through 5 of the sentencing guidelines, and with § 3553(a)(4)(B) pointing to Chapter 7.

For all these reasons, I disagree with Moon Seals's arguments that *Moore I* improperly interpreted the disputed statutes and sentencing guidelines. Instead, *Moore I* reached the sensible result that Congress directed by its 1994 statutory amendments.

Appellate Case: 24-1028 Document: 010119361 Date Filed: 10/16/2025 Page: 32 Restricted

knowledging the role English has played in forging this great Nation. Through our shared language, we communicate, we debate our differences and reach compromises, and we express the beliefs in freedom and individual rights that make us uniquely American.

The issue of official language is common sense. It is communication. It is whether Americans will continue to bridge the differences that could easily divide us. It is having one common element, amid our rich diversity, that gives us the essential tool for working within our communities and economy. A shared language provides a cultural guidepost that we must maintain for the sake of our unity, prosperity and democracy.

I am privileged to introduce legislation to designate English the official language of our government. The Language of Government Act affects only the language of public business, not private conversation. It does not affect the home, the church, or the community. It does not affect the home, the church, or the community. It will not affect emergency health services or translators in court cases. But it does affect the future of our Nation.

By Mr. THURMOND (for himself, Mr. BIDEN, and Mr. KENNEDY):

S. 3180. A bill to amend provisions of title 18, United States Code, relating to terms of imprisonment and supervised release following revocation of a term of supervised release; to the Committee on the Juduciary.

IMPLEMENTING AND CLARIFYING CERTAIN RECOMMENDATIONS OF THE U.S. SENTENCING COMMISSION

● Mr. THURMOND. Mr. President, today I rise to introduce legislation which will implement various technical and clarifying proposals related to the revocation of supervised release and probation. This important measure is cosponsored by Senator BIDEN and Senator KENNEDY. These proposals were suggested to me by the U.S. Sentencing Commission with the desire that they might be promptly enacted so that the supervised release component of sentences will function as Congress intended.

Regarding the history of the U.S. Sentencing Commission, in 1984, I worked with Senator BIDEN, Senator KENNEDY, and other colleagues on the Judiciary Committee and in the Senate to formulate the Sentencing Reform Act which was enacted into law as part of the Comprehensive Crime Control Act of 1984. The Sentencing Reform Act focused on two major problems in the Federal criminal justice system: First, the disparity in sentences imposed on individuals convicted of similar crimes; and second, the actual time served by those convicted of crimes which was

often much less than the sentence imposed. In an effort to address these problems, the Sentencing Reform Act created the U.S. Sentencing Commission. Its purpose is to formulate guidelines to be used by judges in the sentencing process. As a result of the Commissions efforts, people now convicted of similar crimes will serve similar sentences and the sentences imposed will reflect the actual time that must be served.

Despite the success of the Sentencing Commission and its guidelines, steps must be taken to ensure that it is free to carry out its duties and responsibilities. The legislation I am introducing today will enhance the Commission's ability to carry out its mandate.

Briefly, this legislation would make the following changes to current law. First, it would clarify that Federal courts retain the flexibility to order an additional period of supervised release following the imposition of a term of imprisonment for a violation of a condition of supervised release. This measure would also grant the Sentencing Commission greater flexibility in drafting sentencing guidelines for the sanctioning of offenders who, while on supervised release, are found in possession of a controlled substance. This greater flexibility will enable the Commission to draft guidelines and policy statements that best achieve the goals of consistency and proportionality that the sentencing reform act was intended to cover.

Finally, this bill provides that decisions to revoke supervised release should be based upon sentencing guidelines and policy statements issued by the Commission specifically for that purpose. The effect of this change would be to settle a split among the Federal courts on the issue of whether the guidelines applicable to initial sentencing of defendants also apply to probation revocation decisions.

In closing, the technical changes embodied in this legislation are consistent with original congressional intent under the Sentencing Reform Act. I believe this legislation will further the goals of the Sentencing Reform Act to provide uniformity in sentencing as well as assure that sentences will be served in their entirety.

For these reasons, I strongly urge my colleagues to closely review this legislation.

Mr. President, I ask unanimous consent that two letters I received from Judge William Wilkins, Chairman of the U.S. Sentencing Commission, detailing these technical amendments be printed in the RECORD.

There being no objection, the letters were ordered to be printed in the RECORD, as follows:

U.S. SENTENCING COMMISSION,
*Washington, DC, July 26, 1990.*
Senator STROM THURMOND,
*Ranking Member, Committee on the Judiciary, U.S. Senate, Washington, DC.*

DEAR SENATOR THURMOND: I am pleased to transmit to you two legislative proposals that the Sentencing Commission approved for submission to Congress at its July 24, 1990, meeting. Although the proposals are primarily technical in nature, the Commission believes they would make a useful policy contribution to the proper, congressionally intended role of supervised release within the federal criminal justice system.

In brief, the Commission recommends the following changes:

(1) Ensure the Availability of Supervised Release Following Revocation (and Other Related Changes)—The Commission recommends that 18 U.S.C. § 3583(e)(3) be amended to clarify that courts retain flexibility to order an additional period of supervised release following the imposition of a term of imprisonment for a violation of a condition of supervised release. While current law can be read to allow this kind of flexibility already, a decision by the Ninth Circuit has recently rejected such a construction—although the court acknowledged as a policy matter that its decision appeared to run counter to the purposes of the supervised release statute. The proposed amendment would help ensure the more flexible reading the court favored for policy reasons and the Commission also believes would better reflect congressional intent in this area. Other subsections of the proposed amendment are designed to complement the central feature just described or to effect a purely technical change.

(2) Provide Flexibility as to the Amount of Prison to be Served Upon Revocation for Drug Possession—The Commission also recommends that 18 U.S.C. § 3583(g) be amended to allow greater flexibility in sanctioning offenders on supervised release who are found to be in possession of a controlled substance. In this case, the greater flexibility would enable the Commission to draft guidelines and policy statements that best achieve the goals of consistency and proportionality that the Sentencing Reform Act was intended to foster. This proposal parallels and complements a similar provision is the Crime Control bill recently passed by the Senate pertaining to revocation of probation for drug possession.

A fuller explanation of these two amendments in included with the Commission's proposed amendment language enclosed with this letter. Because the recent court decision may lead to undesirable applications of the supervised release statute, the Commission recommends congressional action, especially on the first of these proposals, at the earliest opportunity. In addition, because the Commission expects to issue policy statement governing supervised release revocation this fall, timely passage of both of these proposals would also help enhance the effectiveness of the newly issued policy statements in achieving their intended objectives.

The Commission appreciates your assistance on this matter.

Sincerely,
WILLIAM W. WILKINS, Jr.,
*Chairman.*

### PROPOSALS

#### PROPOSAL ONE: TO ENSURE THE AVAILABILITY OF SUPERVISED RELEASE FOLLOWING REVOCATION (AND OTHER RELATED CHANGES)

Sec. 1. (a) Subsection (e)(3) of section 3583 of title 18, United States Code, is amended to read as follows:

"(3) revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release authorized by statute for the offense of which the defendant was convicted without credit for time previously served on postrelease supervision, if it finds by a preponderance of the evidence that the person violated a condition of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure that are applicable to probation revocation and to the provisions of applicable policy statements issued by the Sentencing Commission, except that a person whose term is revoked under this paragraph may not be required to serve more than 3 years in prison if the offense for which the person was convicted was a Class B felony or more than 2 years in prison if the offense was a Class C or D felony.".

(b) Subsection (e)(5) of section 3583 of title 18, United States Code, is redesignated as subsection (e)(4).

(c) Section 3583 of title 18, United States Code, is amended by adding at the end the following new subsection:

"(h) Where a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3) of this section, the court may include the requirement that the defendant be placed on a term of supervised release after imprisonment. The length of such term of supervised release shall not exceed the term of supervised release authorized by statute for the offense of which the defendant was convicted, less any term of imprisonment that was imposed upon revocation of supervised release.".

#### PROPOSAL TWO: TO PROVIDE FLEXIBILITY AS TO THE AMOUNT OF PRISON TO BE SERVED UPON REVOCATION FOR DRUG POSSESSION

Sec. 1. Subsection (g) of section 3583 of title 18 United States Code, is amended to read as follows:

"(g) Possession of controlled substances. If the defendant is found by the court to be in the unlawful possession of a controlled substance, the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment not to exceed the maximum term of imprisonment authorized under subsection (e)(3) of this section."

---

#### EXPLANATION OF AMENDMENTS TO ENSURE AVAILABILITY OF SUPERVISED RELEASE FOLLOWING REVOCATION

##### PROPOSED SUBSECTION 1 (a)

This subsection amends 18 U.S.C. § 3583(e)(3) to authorize a court to order a defendant, upon revocation of his or her term of supervised release, to serve a period of imprisonment not exceeding the maximum period of supervised release that initially could have been imposed under the statute. In contrast to the proposed amendment, the maximum period of imprisonment that may be ordered upon revocation of supervised release under current law generally may not exceed the term of supervised release actually imposed at the original sentencing.[1] The proposed amendment retains the present limitation in § 3583(e)(3) that the maximum period of imprisonment ordered upon revocation may not exceed three years if the defendant was originally sentenced for a Class B felony, or two years if the defendant was sentenced for a Class C or D felony.

The provision is designed to complement a proposed new subsection 3583(h) that expressly authorizes a court to order further supervision after the defendant completes a prison term that has been imposed for violating a condition of supervised release. The amendment also would permit courts greater flexibility to impose imprisonment sanctions for serious violations of the conditions of supervised release, without being limited by the maximum of the original term of supervised release imposed. The modification avoids anomalies that otherwise may result under the current statute. For example, Defendant X, convicted of a B felony and given a one-year (below-guideline) term of supervised release, commits a serious violation of his supervised release term; upon revocation, he could be ordered to serve no more than one year in prison (unless the court first extended the term to three years or more, a bifurcated procedure that is to say the least, more cumbersome). Defendant Y, also convicted of a B felony and given a three-year term of supervised release, violates an equally serious condition of supervised release; under current law, he could be ordered to serve up to three years in prison. Under the proposed amendment, a court would have equal flexibility to order a three-year period of imprisonment for each defendant.

The proposed also maintains a proper relationship between alternative sanctions, ensuring that extending the term of supervision would be used as a less punitive sanction than revocation, whereas the converse may be true under current law. Without this change, a defendant subject to a short period of supervised release who commits a serious violation warranting revocation would potentially face less imprisonment time than another defendant who committed a less serious violation but whose term of supervised release had previously been extended for minor violations.

While the proposal may on the surface appear to increase widely the potential prison exposure for defendants, in actual practice this effect would be quite limited due to the fact that current sentencing guidelines require minimum supervised release terms equal or greater to the maximum imprisonment sanction authorized under the statute (unaffected by this proposal) for all offenses except Class A felonies. Thus, the only types of cases potentially affected by this change will be defendants who have been sentenced for Class A felonies who are given supervised release terms less than the statutory maximum and those who are given a period of supervised release less than required by the guidelines.

##### PROPOSED SUBSECTION 1 (b)

In order to correct a technical error in the existing statute, subsection (e)(5) is redesignated as subsection (e)(4).

---

[1] An exception to this rule would occur if, pursuant to § 3583(e)(2), the court had extended the term of supervised release beyond the original term imposed. In this case, current law would allow a court to order that an offender serve in prison all or part of the extended term upon revocation.

##### PROPOSED SUBSECTION 1(c)

This subsection provides clear authority for a court, in appropriate cases, to order a further period of supervision upon release from imprisonment when supervised release is revoked. While an argument can be made that the present statute already permits a court, at a minimum, to order a defendant to recommence the unexpired portion of a term of supervised release, the Ninth Circuit of Appeals has recently held to a contrary. See *United States v. Behnezhad*, No. 89-10529 (9th Cir. July 3, 1990). The court recognized that the policy result of its holding was undesirable, stating:

"Since there would be great virtue and much benefit to all concerned if courts were given more flexibility in this area, we embrace this result with velleity. Nevertheless, embrace it we must for Congress has spoken."

The authority to impose further supervision following revocation would appear to best serve the purposes of the supervised release scheme. Absent such flexibility, courts may be reluctant to revoke supervised release, even in the face of serious breaches of supervision conditions, because doing so could lead to an early expiration of criminal justice control; once the prison term imposed upon revocation were served, the defendant would be unsupervised even though his conduct could well demonstrate to the court an even greater need for supervision than at the defendant's original sentencing. Thus, an offender serving a lengthy supervised release term—for example, 10 years (as is possible for some controlled substance offense)—who violated a condition requiring a short period of re-imprisonment—for example, 90 days—would have virtually the entire 10-year supervised release term extinguished if he committed the violation early in the term. Indeed, this possibility arguably may encourage violations of supervised release conditions. Alternatively, this result may compel some courts to impose a longer period of imprisonment than otherwise would be needed to punish the violation, in order to maintain criminal justice control since post-release supervision would not be available.

The proposed change seeks to avoid presenting the court with the choice between doing too little and doing more than necessary by permitting the court to order a further term of supervised release following an imprisonment sanction. The length of this additional term of supervision could not exceed the maximum term of supervised release originally imposable under amended subsection (e)(3), as reduced by any period of imprisonment the defendant served upon revocation. Furthermore, a defendant could only be ordered to resume supervised release if he had served less time in prison upon revocation than the maximum allowed under subsection (e)(3) (i.e., less than three years for a B felony, less than two years for a C or D felony, less than one year for a Class A misdemeanor). This ensures that revocation will be a statutorily available sanction at all times that a defendant is serving a period of supervised release.

Among conceivable policy choices, this proposal strikes a middle ground. At one extreme of the policy options, a court could be empowered to impose an entirely new term of supervised release undiminished by any period of imprisonment served as a revocation sanction. This option could result, however, in a defendant remaining on supervised release indefinitely. At the other ex-

treme, a defendant could be given credit for both time on supervision plus time in prison following revocation. This option, perhaps available under existing law (reading the statute differently from the Ninth Circuit construction), provides less flexibility for the court and would undermine the objective of providing a period of post-imprisonment supervision for defendants.

Under this middle-ground proposal a defendant will fulfill his supervised release requirement by either satisfactorily serving the period of supervision (as it may be extended, or imposed following imprisonment upon revocation) or upon revocation(s), by serving in prison the maximum period allowed by law. The proposal, therefore, embodies a "declining balance" approach to the satisfaction of a supervised release obligation under which both the maximum prison sanction available upon revocation and the maximum period of additional supervision that may be mandated following imprisonment are progressively reduced by any period of additional imprisonment the defendant is ordered to serve upon revocation.

### EXPLANATION OF AMENDMENT ON REVOCATION FOR DRUG POSSESSION

The Commission also recommends an additional, unrelated amendment to 8 U.S.C. § 3583(g), pertaining to mandatory revocation for a defendant found by the court to have possessed a controlled substance. The proposal would retain the mandatory revocation requirement but would eliminate the requirement that the defendant be ordered to serve in prison at least one-third of the term of supervised release.

The existing "one-third" requirement arbitrarily bases the sanction on the length of the term of supervised release to which the defendant is subject, rather than on the seriousness of the violation and is unnecessary in a system in which court revocation decisions are structured by sentencing guidelines. In determining the length of an imprisonment sanction to be imposed upon revocation on a defendant found in unlawful possession of a controlled substance, the court is required to consider any applicable guidelines or policy statements issued by the Sentencing Commission. These Commission pronouncements, in order to be consistent with the statute, necessarily must require revocation of supervised release for illegal drug possession and can better ensure consistency and proportionality of punishment for such violations.

Additionally, the new language substitutes the term "revoke" for the existing term "terminate" and inserts the word "unlawful" before "possession" in order to clarify the intent of the provision.

U.S. SENATE SENTENCING COMMISSION,
*Washington, DC, August 24, 1990.*
Senator STROM THURMOND,
*Ranking Member, Committee on the Judiciary, Washington, DC.*

DEAR SENATOR THURMOND: On July 26, 1990, I transmitted to you two technical and clarifying legislative proposals relating to the revocation of supervised release that the Sentencing Commission recommends for prompt enactment so that the supervised release component of sentences will function as Congress intended. Subsequent events have led the Commission to supplement those proposals with the attached proposed clarification of the statute on revocation of probation to ensure this sanction also will be applied consistent with Congressional intent.

Specifically, the Commission recommends minor modifications to 18 U.S.C. § 3565, pertaining to revocation of probation, and to 18 U.S.C. § 3553, pertaining to factors to be considered by courts in the imposition of sentence. The clarifying language will provide that revocation decisions are to be based upon sentencing guidelines and policy statements issued by the Commission specifically for that purpose, thereby negating any implication in current statutory language that the guidelines applicable to the initial sentencing of defendants also apply to probation revocation decisions.

Since the Commission is instructed under 28 U.S.C. § 994(a)(3) to issue guidelines or policy statements for the revocation of probation and supervised release, we believe Congress clearly intended that these guidelines or policy statements, rather than those applicable to initial sentencing, be used by courts when sanctioning probation (or supervised release) violators. However, on July 31, 1990, the U.S. Court of Appeals for the Eleventh Circuit, without any discussion of this express directive to the Commission, held in *United States* v. *Smith*, No. 89-8226, that the guideline range applicable to the initial sentencing decision also constrains the court when it revokes probation. In particular, the court held that the provision of 18 U.S.C. § 3565(a)(2) authorizing a court upon revocation of probation to "impose any other sentence that was available . . . at the time of the initial sentencing" does not encompass any other sentence authorized by statute but, rather, encompasses only a sentence authorized by statute that is within the guideline range applicable at the defendant's initial sentencing decision. Moreover, the court interpreted the statute to preclude a court from considering the probation violation itself as a basis for sentencing above the original guideline range applicable at the defendant's initial sentencing.

As a result of the court's holding, courts in the Eleventh Circuit will be constrained by a guideline range that, in our view, will be inadequate to sanction probation violations appropriately in many cases. Additionally, in some cases (for example, those in which the defendant was sentenced to probation with a condition of jail confinement for a period of time) a defendant will be subject to little or no imprisonment sanction even where there was a serious breach of probation conditions. Nevertheless, while we believe the Eleventh Circuit decision is plainly contrary to sound policy and congressional intent, we cannot say it is an implausible reading of the statute or that other courts may not come to a similar conclusion.

Furthermore, to the extent this view of the law is sustained, it will impede Commission plans to implement a system of policy statements for revocation decisions, preparatory to issuing guidelines for revocation at a future date. Toward this end, the Commission has just approved a set of policy statements to guide courts in making decisions regarding the revocation of probation and supervised release and plans to distribute them in the next several weeks. The Eleventh Circuit decision in *Smith* would appear, however, effectively to block courts in that circuit from using these policy statements for probation revocation decisions.

The attached proposed legislative change modifies the statutory language upon which the Eleventh Circuit rested its decision to promote an interpretation that is consistent with Congressional intent under the Sen-

tencing Reform Act. It specifically references the guidelines or policy statements issued by the Commission under 18 U.S.C. § 994(a)(3) to remove any doubt that these pronouncements—not those applicable to initial sentencing decisions—are the appropriate reference for revocation purposes.

The Commission recommends congressional enactment of this probation revocation proposal, as well as the proposals on supervised release revocation previously transmitted, at the earliest opportunity.

If I can provide any additional information with respect to any of these proposals, please do not hesitate to contact me, or have your staff contact John Steer, the Commission's General Counsel at 626-8500.

Sincerely,
WILLIAM W. WILKINS, JR.,
*Chairman.*

### PROBATION REVOCATION PROPOSAL

Sec. 1. (a) Subsection (a)(2) of section 3565 of title 18, United States Code, is amended by striking "impose any other sentence that was available under subchapter A at the time of the initial sentencing" and inserting in lieu thereof "resentence the defendant under the provisions of subchapter A of this chapter".

(b) Subsection (a)(4) of section 3553 of title 18, United States Code, is amended by inserting "(A)" after "established for" and by inserting at the end prior to the semicolon ", or (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(3)".

2. Note: Conforming changes also to be made in 18 U.S.C. § 3565 (a) and (b), taking into account pending crime bill provisions.

§ 3565. Revocation and probation

(a) Continuation or revocation.—If the defendant violates a condition of probation at any time prior to the expiration or termination of the term of probation, the court may, after a hearing pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure, and after considering the factors set forth in section 3553(a) to the extend that they are applicable—

(1) continue him on probation, with or without extending the term of [1] modifying or enlarging the conditions; or

Notwithstanding any other provision of this section, if a defendant is found by the court to be in possession of a controlled substance, thereby violating the condition imposed by section 3565(a)(3), the court shall revoke the sentence of probation and sentence the defendant to not less than one-third of the original sentence.

§ 3553. Imposition of a sentence

(a) FACTORS TO BE CONSIDERED IN IMPOSING A SENTENCE.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court in determining the particular sentence to be imposed shall consider—

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

---

[1] So in original. Probably should be "or".

Appellate Case: 24-1028 Document: 010119363 Date Filed: 10/16/2025 Page: 34 Restricted

*October 10, 1990*          CONGRESSIONAL RECORD—SENATE          **28231**

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, to other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for (A) the applicable category of offense committed by the applicable category of defendant, as set forth in the guidelines that are issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(1) and that are in effect on the date the defendant is sentenced, or (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(3);

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

#### EXPLANATION OF PROBATION REVOCATION PROPOSAL

Subsection (a) amends 18 U.S.C. § 3565(a)(2) by deleting language instructing a court upon revocation of probation to "impose any other sentence that was available under subchapter A at the time of the initial sentencing." In lieu of this language, the court would be authorized to "resentence the defendant under the provisions of subchapter A of this chapter." The phrase "available under subchapter A at the time of the initial sentencing" recently was erroneously construed by the Court of Appeals for the Eleventh Circuit in *United States v. Smith*, No. 89-8226 (July 31, 1990) to mean a sentence in accordance with the sentencing guidelines applicable at initial sentencing of the defendant. In contrast, the substitute language would permit courts to resentence a defendant whose probation sentence is revoked to another statutorily authorized sentence—i.e., a sentence authorized under sections 3551-3559 of title 18.

Although the substitute language deletes the phrase "at the time of the initial sentencing," the ex post facto clause of the Constitution nevertheless would prevent a defendant whose probation is revoked from facing a greater statutory penalty than authorized under statutes in effect when the original offense was committed. The term "resentence" in the substitute proposal is appropriate because, under the Sentencing Reform Act, probation is a sentence; therefore, when a probation sentence is revoked, the defendant must be "resentenced."

Subsection (b) of the proposal amends 18 U.S.C. § 3553(a)(4)—factors to be considered in imposing sentence—to provide a direct reference to Sentencing Commission guidelines or policy statements applicable to revocation decisions. The proposed amendment makes it clear that it is the guidelines or policy statements issued specifically to guide revocation decisions, and not the guidelines and policy statements applicable at initial sentencing, that govern court decisions when considering violations of probation or supervised release. Current statutory language in section 3553 contains no reference to guidelines or policy statements issued by the Commission pursuant to 28 U.S.C. § 994(a)(3), the paragraph authoriz-

ing and directing the Commission to promulgate guidelines or policy statements for the revocation of probation and supervised release.[1] Thus, under current law, although the Commission is directed to issue such pronouncements, there is no analogous directive in section 3553 requiring court consideration of these particular guidelines or policy statements. The proposed amendment corrects this omission and incorporates court consideration of Commission guidelines or policy statements for revocation decisions into the sentencing scheme of this chapter of the Sentencing Reform Act.

Concurrent with the above proposed amendments, conforming changes should be made in the last sentence of 18 U.S.C. § 3565(a) and in 18 U.S.C. § 3565(b). These conforming changes will need to be coordinated with pending amendments to these subsections contained in Senate and House versions of the Comprehensive Crime Control Act of 1990.

---

UNITED STATES OF AMERICA, PLAINTIFF-APPELLEE, v. PHILBERT RAY SMITH, DEFENDANT-APPELLANT

[No. 89-8226 Non-Argument Calendar]

UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

1990 U.S. App. LEXIS 12850

JULY 31, 1990.

#### PRIOR HISTORY: [*1]

Appeal from the United States District Court or the Southern District of Georgia. No. CR488-76; Vining, Judge.

Counsel: W. Douglas Adams, Brunswick, Georgia, for Defendant-Appellant. Kathryn M. Aldridge, AUSA, Savannah, Georgia, for Plaintiff-Appellee.

Judges: Tjoflat, Chief Judge, Clark, Circuit Judge, and Henderson, Senior Circuit Judge.

#### OPINION BY: TJOFLAT

Opinion: Philbert Ray Smith appeals from an order of the district court revoking his probation and sentencing him to a term of incarceration. We vacate Smith's sentence and remand the case to the district court of resentencing.

#### I.

On August 15, 1988, Smith pled guilty to an information charging him with possession of counterfeit United States currency in violation of 18 U.S.C. § 472 (198, for which the maximum statutory term of imprisonment is fifteen years. Because the offense occurred after November 1, 1987, Smith's sentence was governed by The Sentencing Reform Act of 1984, Pub.L. No. 98-473, 98 Stat. 1987 (codified, as amended, in scattered sections of 18 and 18 U.S.C.), and the sentencing guidelines promulgated thereunder, see United States Sentencing Commission, Guidelines Manual (West Nov. 1989) (hereinafter Sentencing Guidelines). Under the guidelines, [*2] the base offense level for offenses involving counterfeit currency is 9. See id. § 2B5.1(a). In his presentence investigation report, to which neither party objected, the probation officer adjusted the offense level upward by two levels based on defendant's role as an organizer of the two-person scheme to pass counterfeit bills, see id. § 3B1.1(c), and downward by

two levels based on his acceptance of responsibility, see id. § 3E1.1(a), for a total offense level of 9. The probation officer placed Smith in Criminal History Category I. The applicable sentencing range, therefore, was from four to ten months of imprisonment, see id. ch. 5, pt. A sentencing tbl. & commentary. Because the minimum term of imprisonment specified by the sentencing table was between one and six months, Smith was eligible for probation provided he served a term of community confinement. See id. § 5B1.1, 5C2.1(c)(2), 5C2.1(e)(2). On November 21, 1988, the district court implicitly adopted the probation officer's guideline application and imposed a sentence of three years' probation, with four[1] months to be spent at a community treatment center, on the condition that, inter alia, Smith[*3] remain drug-free.

Smith entered the Chatham County Community Treatment Center in December 1988. Two drug tests administered while Smith was at the Center revealed the presence of drugs in his urine. Smith was expelled from the Center after the second test, and his probation officer petitioned the court for revocation of Smith's probation. The probation officer appended to the petition a report on Smith's conduct while on probation and recommended a new sentence of eighteen months' imprisonment followed by a two-year term [*4] of supervised release. The recommended sentence was calculated by applying the sentencing guidelines as follows:

Total offense level for the offense of conviction: 9.

Base offense level for the conduct that violated probation:[2] +4.

Adjustments: +/- 0.

Total: 13.

Criminal History Category: 1.

Applicable Guideline.

Range: 12-18 months.

Sentence Recommendation: 18 months.

On March 6, 1989, the district court held a hearing and revoked Smith's probation. The court correctly noted that the guidelines do not specify how a court is to proceed after revoking a guideline sentence of probation, see id. ch. 7, then stated: "[T]here being no [*5] guidelines [on resentencing after probation revocation], the Court then reverts to the statutory maximum for the underlying offense, in this case possession of counterfeit bills. The maximum punishment prescribed by statute for that is fifteen years." The court then implicitly adopted the probation officer's recommendation and imposed a prison term of eighteen months followed by a period of supervised release not to exceed three years.

#### II.

In this case of first impression for the courts of appeals, Smith argues that the district court erred (1) in holding that the guidelines do not apply to probation revocation proceedings and (2) in imposing a

---

[1] Paragraph (4) of section 3553(a) requires courts to consider guidelines for initial sentencing decisions issued by the Commission under 28 U.S.C. § 994(a)(1). Paragraph (5) of section 3553(a) requires courts to consider policy statements issued by the Commission under § 994(a)(2).

---

[1] Under the Comprehensive Crime Control Act of 1984, probation is a type of sentence in and of itself. See 18 U.S.C. § 3561 (1988); S. Rep. No. 225, 98th Cong., 2d Sess. 88, reprinted in 1984 U.S. Code Cong. & Admin. News 3182, 3271. Under prior law, the court would either (1) suspend the imposition of sentence and put the defendant on probation, or 92) impose a prison sentence, suspend its execution, and put the defendant on probation. See 18 U.S.C. § 3651 (1982) (repealed 1986).

[2] See Sentencing Guidelines § 2D2.1(a)(3) (base offense level of 4 for possession of controlled substances not covered specifically by other subsection).

prison sentence (eighteen months) that exceeds the one originally available under the guidelines at the time of initial sentencing (four to ten months). We agree.

The statute governing probation revocation provides in relevant part:.

(a) Continuation or Revocation.—If the defendant violates a condition of probation at any time prior to the expiration or termination of the term of probation, the court may, after a hearing pursuant to Rule 32.1 of the Federal Rules of Criminal Procedure, and after considering the factors set forth in [*6] (18 U.S.C.) section 3553(a) to the extent that they are applicable—.

(1) continue him on probation, with or without extending the term [or] modifying or enlarging the conditions; or

(2) revoke the sentence of probation and impose any other sentence that was available under subchapter A [18 U.S.C. § 3551-3559] at the time of the initial sentencing.

18 U.S.C. § 3565 (1988) (emphasis added).[3]

At the time of Smith's initial sentencing, the district court was required to apply the guidelines. Thus, the guidelines, as well as the statutory maximum for the offense of conviction, determined what sentences were "available" at that time. [*7] Before the district court could impose a proper sentence under the guidelines, it has to make findings of fact concerning Smith's total offense level and criminal history category, which it did by adopting the findings in the probation officer's original report without objection from either party. Naturally, the facts established at the time of initial sentencing could include only conduct that had already occurred. Because the conduct that constituted a probation violation had not yet occurred, no upward adjustment in Smith's total offense level could have been based on that conduct, and the longer sentence of imprisonment resulting from such an adjustment was therefore not "available." Thus, pursuant to section 3565, the guidelines control the imposition of a new sentence after probation revocation in the sense that the original determinations of total offense level and criminal history category, based upon relevant facts established at the time of sentencing, delimit the sentences that were then available. The probation officer's use of the guidelines—adding the base offense level for the post-sentencing conduct that violated probation to the total offense level for the offense [*8] of conviction—was clearly incorrect in light of section 3565.

The relevant facts before the court at the time of initial sentencing also determine whether and to what extent the district court may depart from the guidelines after probation revocation. If at that time the court had before it information that would have justified a departure, the court may revisit those facts and, based upon them, may choose to depart when imposing the new sentence. In such a case, the sentence departing from the guidelines was available at the time of initial sentencing, although the court did not at that time choose to depart or event to identify the information that supported a possible departure. The proper extent of the departure (subject to the statutorily prescribed sentencing range) depends, of course, upon the relevant sentenc-

[3] Section 3565, as amended in 1988, requires revocation when a defendant on probation is found to be in possession of a controlled substance. See 18 U.S.C. § 3565(a). The terms of the amendment apply only to persons whose probation began after December 31, 1988, however, and therefore do not apply to this case. See Pub. L. 100-690, title VII, § 7303(d), 102 Stat. 4181, 4464.

ing facts originally before the court rather than on the conduct that constituted the probation violation.

This is not to say that post-sentencing conduct is irrelevant to probation revocation proceedings. Where revocation is not mandatory, the district court [4] may certainly consider such conduct when deciding whether to revoke probation or to continue it, either [*9] on the same or different terms, see id. § 3563(c), 3565(a)(1). Furthermore, after revoking probation, the district court has discretion to impose a new sentence within the applicable range prescribed by law, i.e., statute and guidelines, at the time of initial sentencing—in this case, within a range of four to ten months. Common sense suggests that the court ought to be able to consider the conduct giving rise to revocation (i.e., post-sentencing conduct) in deciding what sentence to select within the guideline range or even whether to depart from the guidelines, provided the conduct justifying departure (i.e., pre-sentencing conduct upon which departure could have originally been based) was brought to the court's attention at the initial sentencing hearing. Similarly, where a term of supervised releae is discretionary, see Sentencing Guidelines § 5D1.1(b), the court ought to be able to consider the probation violation in deciding whether to impose such a term. And whether supervised release is discretionary or mandatory, see id. § 5D1.1(a), the court should be able to consider the violation in determining the conditions, and within the range prescribed [*10] by law, the duration of the term, see id. § 5D1.2

In the case at hand, the district court's imposition of a three-year term of supervised release fell within the applicable sentencing range for a Class C felony. See id. § 5D1.2(b)(2) (offense is Class C felony if statutory term is from ten to twenty-five years). Supervised release is mandatory, however, only if a prison sentence of more than one year is imposed, see id. § 5D1.1(a); in such cases as the one at hand, where the applicable prison sentence is less than one year, the court has discretion with respect to supervised release, see id. § 5D1.1(b). In view of the court's erroneous imposition of a sentence exceeding one year, we cannot know whether the court would have imposed a term of supervised release had it exercised its discretion in the matter. Therefore, on remand, district court should decide not only where to sentence Smith within the four-to ten-month range but also whether [*11] to impose a term of supervised release, and, if the court so decides, its duration. For these purposes, the court may consider Smith's conduct on probation.

### III.

For the foregoing reasons, we vacate Smith's sentence and remand the case to the district court for resentencing consistent with this opinion.

Vacated and remanded.●

---

## ADDITIONAL COSPONSORS

### S. 2044

At the request of Mr. BIDEN, the name of the Senator from Georgia [Mr. NUNN] was added as a cosponsor of S. 2044, a bill to require tuna products to be labeled respecting the

[4] See, e.g., supra note 3; Sentencing Guidelines § 7A1.2(a).

method used to catch the tuna, and for other purposes.

### S. 2111

At the request of Mr. SIMON, the names of the Senator from Indiana [Mr. COATS], the Senator from Montana [Mr. BURNS], the Senator from Colorado [Mr. ARMSTRONG], the Senator from Wisconsin [Mr. KASTEN], and the Senator from Minnesota [Mr. BOSCHWITZ] were added as cosponsors of S. 2111, a bill designating the month of May as "Asian/Pacific American Heritage Month."

### S. 2637

At the request of Mr. REID, the names of the Senator from Pennsylvania [Mr. HEINZ] and the Senator from Vermont [Mr. JEFFORDS] were added as cosponsors of S. 2637, a bill to amend the Toxic Substances Act to reduce the levels of lead in the environment, and for other purposes.

### S. 2729

At the request of Mr. CHAFEE, the names of the Senator from California [Mr. CRANSTON], the Senator from Massachusetts [Mr. KENNEDY], and the Senator from Hawaii [Mr. AKAKA] were added as cosponsors of S. 2729, a bill to amend the Coastal Barrier Resources Act, and for other purposes.

### S. 2754

At the request of Mr. BIDEN, the name of the Senator from Georgia [Mr. FOWLER] was added as a cosponsor of S. 2754, a bill to combat violence and crimes against women on the streets and in homes.

### S. 2796

At the request of Mr. COHEN, the name of the Senator from Connecticut [Mr. LIEBERMAN] was added as a cosponsor of S. 2796, a bill to amend title IV of the Higher Education Act of 1965 to allow resident physicians to defer repayment of their title IV student loans while completing a resident training program accredited by the Accreditation Council for Graduate Medical Education or the Accrediting Committee of the American Osteopathic Association.

### S. 2813

At the request of Mr. GRAHAM, the name of the Senator from Alabama [Mr. SHELBY] was added as a cosponsor of S. 2813, a bill to authorize the minting of commemorative coins to support the training of American athletes participating in the 1992 Olympic Games.

### S. 2954

At the request of Mr. DODD, the names of the Senator from Delaware [Mr. BIDEN], the Senator from Massachusetts [Mr. KENNEDY], the Senator from Nebraska [Mr. KERREY], the Senator from Nevada [Mr. BRYAN], the Senator from Maryland [Ms. MIKULSKI], and the Senator from New York [Mr. MOYNIHAN] were added as cosponsors of S. 2954, a bill to place re-

Appellate Case: 24-1028   Document: 01019610   Date Filed: 10/16/2025   Page: 36   Restricted